MICHAEL C. WINTER AND LAUREN WINTER, PETITIONERS *v*.
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 5035–05.            Filed August 25, 2010.

P, as an employee of a subch. S bank, received a bonus that
was repayable in part if he quit or was fired for cause. P
reported the full amount of the bonus but now argues that
part was a nontaxable loan. P, as a shareholder, reported his
share of the company's earnings from its regulatory financial
filings and not from the Schedule K–1 which the bank pre-
pared for him. P did not notify R of this inconsistent
reporting; and only after the issuance of the notice of defi-
ciency did R assess the income tax resulting from this incon-
sistent treatment. R contends: (1) The entire bonus was tax-
able income in the year received, (2) P should have reported
his shareholder income consistently with the bank's Schedule
K–1, and (3) P failed to include some dividend, interest, and
gambling income on his return. R issued a notice of deficiency
determining a deficiency and imposing an accuracy-related
penalty under sec. 6662(a), I.R.C. P has conceded R's adjust-
ments relating to dividend, gambling, and interest income. P
and R agree that this Court has jurisdiction to decide all
issues. However, the Court raises the question of whether
secs. 6037(c) and 6213(b)(1), I.R.C., remove the adjustment
relating to P's inconsistently reported shareholder income
from our jurisdiction. This Opinion addresses only that ques-
tion. *Held*: R's failure to assess the amount of the deficiency
attributable to the amount reported inconsistently with the
Schedule K–1 before issuing the notice of deficiency does not
exclude this amount of tax from the deficiency as defined in
sec. 6211, I.R.C., and we have jurisdiction to redetermine R's
adjustment.

*John B. Beery*, *Joseph M. Laub*, and *John J. Scharkey III*,
for petitioners.
*Kathleen C. Schlenzig* and *Julie A. Jebe*, for respondent.

OPINION

GOEKE, *Judge*: Michael Winter owned stock in the sub-chapter S bank where he worked. The bank paid him a large bonus in 2002 but then fired him and demanded part of the bonus back in 2003. On his 2002 Federal income tax return Winter reported the full amount of his bonus and his share of the bank's income and deductions—not as those items were reported by the bank but from his own estimates of what they were.

The parties have argued mostly about the consequences of Winter's failure to report his income from the bank in a manner consistent with the bank's reporting on its return and about the taxability of his bonus in the year he received it. We ourselves question whether we have jurisdiction over these issues because the Internal Revenue Code provides that adjustments arising from inconsistencies between the return of a taxpayer and that of an S corporation in which the taxpayer has an ownership interest should be treated as math errors. The parties tell us that this has no effect on our jurisdiction. This Court agrees with the parties.

## *Background*

Builders Bank (Builders), a corporation wholly owned by Builders Financial Corp. (BFC), hired Winter in 2001 to be its chairman and CEO and granted him a large number of stock options. Winter exercised these options, and by 2002 he owned over 26 percent of BFC. Builders also paid Winter a $5 million bonus that was repayable in part if he quit or were fired for cause. BFC was an S corporation.

Within a year Builders grew dissatisfied with Winter. It fired him on December 26, 2002, and claimed the firing was a termination for cause. In early 2003 it demanded repayment of the unearned portion of the bonus, which by that time was a bit more than $4 million. Winter refused to pay, and he and Builders took their dispute to State court, where Winter argued that Builders had no cause to fire him. The case seems to have been settled, because it was dismissed in January 2004 without opinion.

But before then, in 2003, Winter needed to figure out how much income he had and how to report it on his 2002 income

tax return. S corporations[1] are required to send their shareholders Schedules K–1, Shareholder's Share of Income, Credits, Deductions, etc., listing the amounts of passthrough income or loss they should report on their individual income tax returns.

On its 2002 tax return[2] BFC deducted about $1 million of Winter's bonus payment as a salary expense. BFC split the remaining $4 million—reporting $2 million as prepaid compensation and reducing retained earnings by the same amount, neither of which it deducted against income for 2002. BFC included a copy of each shareholder's Schedule K–1 in the 2002 return that it filed, including one for Winter that showed $820,031 in ordinary passthrough income and $5,062 as his share of BFC's charitable contributions. The Internal Revenue Service (IRS) later audited BFC's return but ended up accepting it as filed.

S corporation shareholders usually report their shares of the corporation's items the same way those items are reported on the Schedules K–1, if only because they know S corporations send the information to the IRS. But Winter broke this pattern. Instead of using the information on the Schedule K–1, he looked up BFC's regulatory financial statements on the FDIC Web site, took the net loss reported there, and multiplied it by his percentage ownership at the end of 2001. (Winter owned 26.82 percent of BFC at the end of 2001 and claims he was unaware of an equity distribution that left him with only 26.32 percent at the end of 2002.) This calculation would probably work if BFC treated each item identically for both tax and regulatory reporting purposes. But BFC's 2002 regulatory statements showed a charge against earnings for the entire bonus paid to Winter, in contrast to its 2002 tax return on which it claimed a deduction for just one-fifth. Winter's calculations—based on the regulatory report—therefore showed a total 2002 passthrough loss of

[1] If a business meets the requirements of sec. 1361, it may elect to become an "S corporation" and pay no corporate tax. An S corporation's income and losses, like a partnership's, flow through to its shareholders, who then pay income tax.

All section references in this Opinion are to the Internal Revenue Code in effect for the year at issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Builders and BFC filed consolidated Federal and State income tax returns and consolidated regulatory and financial statements. Under sec. 1361(b)(3) in certain circumstances an S corporation that wholly owns another company may elect to combine assets, liabilities, income, deductions, and credits for Federal income tax purposes.

about $1.2 million and not the passthrough income of about $820,000 that BFC had reported on Winter's Schedule K–1. Winter also failed to claim his share of BFC's charitable contributions reported on its tax return.

Winter's excuse for this deviation from normal reporting procedures was that he never received a Schedule K–1. The record shows, however, that Builders sent an overnight package via FedEx to Winter on March 13, 2003. Builders claims that the package held a cover letter and Winter's 2002 Schedule K–1. Winter claims that he never got the package. We find that Builders used the correct name, street address, State, and ZIP Code but listed the wrong Chicago suburb (Highland Park instead of Deerfield) on the mailing label. There was another Michael Winter who lived in Highland Park, but his house number, street name, and ZIP Code were all different. The parties offer no evidence that this other Michael Winter received the package; and though FedEx did not obtain a signature, Builders did receive confirmation of delivery on March 14, 2003. Winter also never asked Builders or the IRS for another copy of the Schedule K–1.

On February 24, 2006, respondent issued Winter a notice of deficiency, including respondent's determination that Winter should have reported BFC income consistent with the income shown on the Schedule K–1. After the issuance of the notice of deficiency, respondent summarily assessed the amount of tax based upon the reporting inconsistent with the Schedule K–1.

Winter was a resident of Illinois when he timely filed his petition, and he petitioned the Schedule K–1 disputed amount as well as other issues. Trial was set to begin in Chicago when the parties agreed to submit the case for decision under Rule 122 on March 13, 2006. In the course of drafting the Opinion, the Court identified a possible jurisdictional problem and asked the parties for their views. We therefore decide whether we have jurisdiction before addressing the substantive issues in a subsequent opinion.

## *Discussion*

The issue is whether this Court has jurisdiction over the adjustment to Winter's distributive share of S corporation income or whether respondent must assess the tax related to

the adjustment as a math error under section 6213(b)(1), precluding the inclusion in the notice of deficiency of the increase in tax relating to that adjustment. The parties argue that the examination for petitioners' 2002 tax year determined there was a deficiency, as defined in section 6211(a), and that a notice of deficiency was therefore a proper way for the IRS to provide petitioners with respondent's determination.

The concern regarding our jurisdiction arises because Winter failed to comply with section 6037(c) by either reporting consistently with the Schedule K–1 as required by section 6037(c)(1) or notifying the IRS of the possibility of an inconsistency as required by section 6037(c)(2)(A). Section 6037(c)(3) provides potential consequences of Winter's failure to comply:

(3) EFFECT OF FAILURE TO NOTIFY. * * *

* * * * * * *

any adjustment required to make the treatment of the items by such shareholder consistent with the treatment of the items on the corporate return shall be treated as arising out of mathematical or clerical errors and assessed according to section 6213(b)(1). Paragraph (2) of section 6213(b) shall not apply to any assessment referred to in the preceding sentence.

Section 6213(b)(1) provides:

SEC. 6213(b). EXCEPTIONS TO RESTRICTIONS ON ASSESSMENT.—
(1) ASSESSMENTS ARISING OUT OF MATHEMATICAL OR CLERICAL ERRORS.—If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due * * * such notice shall not be considered as a notice of deficiency * * * and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited * * *

Reading the two sections together, our colleague suggests that when a deficiency arises from an inconsistency between a shareholder's return and his S corporation's return and the shareholder fails to report it, the IRS must issue a math-error notice and use summary-assessment procedures.

That is not what happened here in the first instance. Instead of summarily assessing the tax arising from the inconsistent reporting and issuing a notice of deficiency for the rest, respondent originally issued a single notice of defi-

ciency for *both* the increase in tax due to inconsistent reporting and the much smaller increase in tax due to Winter's failure to report income listed on some Forms 1099. Winter's petition disputes the entire amount of the deficiency, and respondent summarily assessed the tax caused by the inconsistent reporting only after the jurisdiction issue was raised in this docketed case. This raises the question whether the failure of the IRS to summarily assess before the issuance of the notice of deficiency precludes our jurisdiction on the issue of the correct income from the S corporation.

The parties agree with each other that we have jurisdiction over all issues and make four points. First, they say that section 6037 lets the Commissioner choose either to issue a notice of deficiency or to summarily assess. They also both argue more generally that because the notice of deficiency in this case undoubtedly gives us jurisdiction over some issues, it also gives us jurisdiction over all the other issues needed to redetermine Winter's entire 2002 tax liability, including the portion resulting from his inconsistent reporting. Respondent also argues that the principles of res judicata and judicial economy also suffice to give us jurisdiction.

The more direct answer to this jurisdiction issue is found in the definition of "deficiency". Section 6211(a) defines "deficiency" as the amount by which the correct tax imposed by the Code exceeds the amount of tax shown on the return plus the amount of tax previously assessed less any rebates. Here a notice of deficiency was issued. This is the traditional "ticket to the Tax Court" under section 6213(a). *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990). The amount of tax resulting from the inconsistent treatment was included in the calculation of the deficiency, and the merits of this tax liability are before us by the parties' pleadings.

Section 6212 authorizes the mailing of a notice of deficiency and contains no restrictions prohibiting the inclusion of mathematical or clerical adjustments. Section 6213 gives the Tax Court jurisdiction to redetermine a deficiency when a petition is filed timely in response to a notice of deficiency. Such jurisdiction does not depend on whether the Commissioner's determination in the notice of deficiency is correct as "it is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a predicate for Tax Court jurisdiction." *Hannan v. Commissioner*, 52 T.C.

787, 791 (1969). Once we have jurisdiction, it generally covers all items necessary to determine the correct tax.[3] Section 6214(a) gives the Tax Court jurisdiction to "redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount * * * [in the notice]". Thus, even if the Schedule K–1 adjustment had not been in the notice of deficiency, section 6214 allows respondent to ask for an increased deficiency based on the Schedule K–1 adjustment.

Section 6512(b) provides the Tax Court with jurisdiction to determine overpayments. *Estate of Baumgardner v. Commissioner*, 85 T.C. 445, 449 (1985). Petitioners are claiming an overpayment. Amended Pet. par. 5d and e. In order to determine whether there is an overpayment, the Court must determine the correct tax that should have been paid. The correct tax for determining overpayments even includes unassessed tax, the assessment of which is barred by the statute of limitations. *Bachner v. Commissioner*, 109 T.C. 125 (1997), affd. without published opinion 172 F.3d 859 (3d Cir. 1998). These jurisdictional provisions of section 6512 provide the Tax Court with authority to decide all issues necessary to determine the correct amount of income tax for the taxable year in issue. Even if respondent made the adjustment based on the Schedule K–1 as a mathematical adjustment, as has now been done, the correctness of the adjustment can still be placed in issue, as can any other previously assessed tax in order to determine the correct amount of the deficiency or overpayment.[4] As stated in *Russell v. United States*, 592 F.2d 1069, 1072 (9th Cir. 1979):

There can be no question that when the taxpayer petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question. A party cannot, in such a case, by failing to raise an issue, or by asking the court not to consider it, escape the *Res judicata* effect of the decision. This is hornbook law.

---

[3] Neither party raises any question about the validity of the notice of deficiency.

[4] Sec. 6211(a) defines "deficiency" without tying it to the date of the notice of deficiency or any other particular date. Consequently, when the Tax Court pursuant to sec. 6214(a) redetermines the "correct amount of the deficiency", we apply sec. 6211(a) as of the date of our decision and compute the deficiency taking into account any amount assessed "previously"; i.e., before the decision. After all, the effect of our decision is to allow the IRS to assess the deficiency.

Our colleague emphasizes that section 6037(c)(3) mandates that an adjustment thereunder *"shall be * * * assessed according to section 6213(b)(1)."* (Emphasis added.) We note, however, that even if this provision requires the IRS to make summary assessment, the IRS complied with this provision when it, timely, summarily assessed the tax after the notice of deficiency was issued and the petition was filed. Section 6037(c) does not contain any "express restrictions" on our "jurisdiction". Section 6037 does not even mention the Tax Court or its jurisdiction. Rather, to read section 6037 as denying our jurisdiction requires inferences that we abandon the literal language of the jurisdictional provisions of the Code and the established caselaw regarding the scope of our jurisdiction.

Section 6037 is unlike the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97–248, sec. 402(a), 96 Stat. 648, which specifically provide a parallel scheme of jurisdiction in this Court for partnership cases. Sec. 6226. Congress originally included S corporations in the TEFRA unified audit procedures but eliminated them in 1996 in adopting section 6037(c) in the Small Business Job Protection Act of 1996, Pub. L. 104–188, sec. 1307(c), 110 Stat. 1781. Congress specifically determined S corporations should not be treated the same as partnerships in adding section 6037(c). [5] It is inconsistent with this legislative history to assume that Congress intended to eliminate S corporation items from the deficiency jurisdiction of this Court involving individual shareholders, because there is no provision for a separate judicial determination of the inconsistently reported item in the case of an S corporation. Thus, there is no neces-

---

[5] H. Conf. Rept. 104–737, at 223 (1996), 1996–3 C.B. 741, 963, states:

*Present law*

\* \* \* \* \* \* \*

In addition, the audit procedures adopted by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") with respect to partnerships also apply to S corporations. Thus, the tax treatment of items is determined at the corporate, rather than individual level.

*House bill*

\* \* \* \* \* \* \*

In addition, the House bill repeals the TEFRA audit provisions applicable to S corporations and would provide other rules to require consistency between the returns of the S corporation and its shareholders.

sity to defer the individual case for an action at the level of the corporation.

As noted previously, respondent assessed the tax arising from the inconsistent reporting of the S corporation income after the Court raised this issue and respondent suspended collecting the assessment pending resolution of the jurisdiction issue. If there is any question whether respondent must summarily assess to raise the inconsistency issue, it is not before us, and we leave that question for future cases.

In conclusion, we have jurisdiction over all of the issues in this case.

*An appropriate order will be issued.*

Reviewed by the Court.

COLVIN, WELLS, GALE, THORNTON, MARVEL, WHERRY, KROUPA, GUSTAFSON, PARIS, and MORRISON, *JJ*., agree with this majority opinion.

---

HALPERN, *J*., concurring in the result only:

I. *The Majority*

Although I agree with the result the majority reaches, I find its analysis confusing because of the reservation in the penultimate paragraph. The majority states: "If there is any question whether respondent must summarily assess to raise the inconsistency issue, it is not before us, and we leave that question for future cases." Majority op. p. 246.

The majority concludes that we have jurisdiction to consider petitioner's claim that his income from BFC was less than the amount reported on the Schedule K–1 he received from Builders. The majority so concludes principally on two alternative grounds. The first is that petitioner assigned error to the entire deficiency that respondent determined, and the alleged unreported income was one of respondent's adjustments contributing to that deficiency. Majority op. p. 243. The second is that, pursuant to our overpayment jurisdiction (which petitioner has invoked), we have "authority to decide all issues necessary to determine the correct amount of income tax for the taxable year in issue." Majority op. p. 244. The majority points out that the correct amount of the

year's tax even includes amounts that cannot be assessed because the period of limitations on assessment and collection has expired. Majority op. p. 244.

What is confusing about the reservation in the penultimate paragraph is that assessment plays no role in either of the majority's principal grounds.

II. *The Dissent*

I do not agree with Judge Holmes, whose argument, I believe, rests on a doubtful premise. As Judge Holmes points out, following the repeal of the two-tier TEFRA audit provisions applicable to S corporations, Congress enacted section 6037(c)(3), which applies the summary assessment rule to S corporation shareholders who report inconsistently. Section 6037(c) was described as "[requiring] consistency between the returns of the S corporation and its shareholders." S. Rept. 104–281, at 51 (1996). In the case of an S corporation shareholder who fails to notify the Secretary of inconsistent treatment, section 6037(c)(3) undoubtedly allows the Commissioner to summarily assess any adjustment necessary to make his return consistent with that of the S corporation. I do not extract from that rule, however, a further rule that an S corporation shareholder can litigate an inconsistency between his return and the S corporation's return only by "prepaying the tax and filing a claim for refund." Dissenting op. p. 259.

What if an S corporation shareholder's only inconsistent reporting (which he does not identify for the Secretary) were his failure to claim a $100 deduction (like the charitable contribution deduction in this case)? The Commissioner would not (indeed, could not) because of that inconsistency assess any additional tax. Now assume that the Commissioner for the same year determines a $35 deficiency in the shareholder's income tax on the ground that he failed to report a $100 taxable dividend from a source other than the S corporation. The shareholder petitions this Court and assigns error to the Commissioner's determination solely on the ground that there is no deficiency because the omitted $100 dividend (which he concedes) is exactly offset by the omitted $100 deduction (which, for the first time, he now claims) and his income tax liability is no greater than the liability shown

on his return.[1] The Commissioner thinks the deduction involves an unresolved question of fact and will not concede any offset. Judge Holmes, I suppose, would refuse to hear the shareholder's offset claim and would send him off with a $35 deficiency and, perhaps, the advice to pay it and sue for a refund. The shareholder's refund claim would not, however, in Judge Holmes' terms, dissenting op. p. 264, "fit snugly" within section 6512(a)(2)—"any amount collected in excess of an amount computed in accordance with the decision of the Tax Court"—since the collection would equal (and not exceed) the deficiency we upheld. More importantly, nothing in section 6037(c) requires any such inefficient approach.

The Internal Revenue Code is extraordinarily complex, and its parts do not always fit together well. The arguments and evidence that Judge Holmes assembles are insufficient to convince me that his reading is correct. Although a taxpayer who receives notification of inconsistent treatment cannot, in response to that notification, petition the Tax Court, a taxpayer who receives a statutory notice of deficiency is explicitly so empowered. While undoubtedly there will be difficulties in harmonizing section 6037(c) with the deficiency procedures, I do not find in that section the wholesale restriction on our jurisdiction to redetermine deficiencies that Judge Holmes finds.

GOEKE and GUSTAFSON, *JJ*., agree with part II of this concurring opinion.

––––––––––––––

HOLMES, *J*., dissenting: No one disputes that Winter reported inconsistently with his S corporation's return and that this forced the Commissioner to make adjustments. Section 6037(c) commands that "any adjustment required to make the treatment of the items by such shareholder consistent with the treatment of the items on the corporate return shall be * * * assessed according to section 6213(b)(1). Paragraph (2) of section 6213(b) shall not apply to any assessment referred to in the preceding sentence."

––––––––––

[1] A deficiency is defined in part as the excess of "the tax imposed by subtitle A" (i.e., the taxpayer's income tax liability) over "the amount shown as the tax by the taxpayer upon his return". Sec. 6211(a). The taxpayer in the example in the text is arguing no deficiency on the ground that, taking into account the two adjustments (dividend and unclaimed deduction), the tax imposed by subtit. A is exactly equal to the tax shown on his return.

The majority doesn't really wrestle with the meaning of this section, but instead pokes around in other corners of the Code to find support for its holding that we have jurisdiction to review the Commissioner's adjustments to Winter's return. But section 6037(c) doesn't go away if we cite the Code's more general jurisdictional sections. The result the majority reaches forces us to pretend that section 6037's "shall make adjustments" using summary assessments really means "may make adjustments;" that section 6213(b)(1)'s command that taxpayers may not file a petition in our Court to contest such adjustments really means that they can file a petition with Tax Court to contest such adjustments; and that the phrase "any adjustment required to make the treatment of the items * * * consistent with the treatment of the items on the corporate return shall be * * * assessed according to section 6213(b)(1)" really means that any such adjustment shall be assessed according to section 6213(b)(1) or section 6214 or section 6215, or refunded according to section 6512.

I disagree.

## I.

Inconsistent reporting results when a taxpayer reports an item on his tax return differently than another entity or taxpayer reports the same item. Before 1982, inconsistent reporting between partners and their partnership, and between S corporation shareholders and their corporation, was a particularly difficult problem for the IRS. The Code doesn't tax partnerships and S corporations at the entity level, and inconsistent reporting forced the IRS to fight partnership or corporate issues with each individual partner or shareholder. This was burdensome, repetitive, and easily led to inconsistent results among similarly situated taxpayers.

In 1982 Congress armed the IRS with a powerful weapon against inconsistency, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97–248, 96 Stat. 324. TEFRA's purpose was "to promote increased compliance and more efficient administration of the tax laws," H. Conf. Rept. 97–760, at 600 (1982), 1982–2 C.B. 600, 662, or—in other words—to promote consistency. *Blonien v. Commissioner*, 118 T.C. 541, 563 (2002) (citing *Greenberg Bros. Pship. #4 v. Commissioner*, 111 T.C. 198, 201 (1998), affd. sub nom.

*Cinema '84 v. Commissioner*, 294 F.3d 432 (2d Cir. 2002)), supplemented by T.C. Memo. 2003–308. Congress created entity-level tax proceedings to determine the proper treatment of entity-level items in a single forum. It also stripped courts of their jurisdiction to hear entity-level disputes at the individual-taxpayer level. See, e.g., Subchapter S Revision Act of 1982, Pub. L. 97–354, sec. 4(a), 96 Stat. 1691 (adding sections 6241–6245); *Blonien*, 118 T.C. at 563. Partners or shareholders of those entities would then be bound by the determinations made in their entity's case.

Most S corporations were at first subject to these TEFRA procedures. But in 1996, Congress repealed the laws that created the S-corporation procedures and decreed that S corporations would no longer have to follow TEFRA. Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104–188, sec. 1307(c)(1), 110 Stat. 1781. The sparse legislative history states only that Congress removed S corporations from the TEFRA procedures because it believed that entities with a limited number of owners should not be subject to TEFRA. See, e.g., S. Rept. 104–281, at 51 (1996).[1] Congress did not however, return to the *status quo ante*—it still wanted to solve the problem of inconsistent reporting. But the legislative history says only that the Act had "other rules to require consistency between the returns of the S corporation and its shareholders." *Id.*

One of these "other rules" is section 6037(c), which requires shareholders to notify the Commissioner of any inconsistent reporting. If they don't, section 6037(c)(3) provides consequences:

(3) EFFECT OF FAILURE TO NOTIFY. * * *

* * * * * * *

any adjustment required to make the treatment of the items by such shareholder consistent with the treatment of the items on the corporate return shall be treated as arising out of mathematical or clerical errors and assessed according to section 6213(b)(1). Paragraph (2) of section 6213(b) shall not apply to any assessment referred to in the preceding sentence.

On its face, this requires a taxpayer to notify the Commissioner of inconsistent reporting or face assessment according

---

[1] There is an analogous exception for partnerships with a small number of partners. Sec. 6231(a)(1)(B).

to section 6213(b)(1)—so-called summary assessment (i.e., assessment without a notice of deficiency and chance for Tax Court review). It is this language that the parties and, I fear, my colleagues are trying to ignore.[2]

Everyone else involved in this case agrees that the Tax Court has jurisdiction over all the issues Winter raises. They do not agree on exactly why that should be so. The parties argue that section 6037 gives the Commissioner his pick of procedures. They also argue that because the notice in this case undoubtedly gives us jurisdiction over some issues, it gives us supplemental jurisdiction over all the other issues needed to redetermine Winter's entire 2002 tax liability. And finally the Commissioner tacks on arguments that *res judicata* and judicial economy mandate our jurisdiction.

The majority adopts some of these, but skips over the language of section 6037(c) to focus on more general provisions in the Code. It first says that the amount of any adjustment from inconsistent reporting is included in the definition of "deficiency" under section 6211, which means we have jurisdiction under sections 6212 and 6213(a). In the alternative it agrees with the parties that we have supplemental jurisdiction under section 6214(a) because Winter was properly in Tax Court to argue about other items in the notice of deficiency. The majority also reasons that we have jurisdiction under section 6512(b) because Winter claims he overpaid his taxes.[3] The majority doesn't bother parsing section 6037(c), but instead reasons that we had jurisdiction before Congress enacted TEFRA's sections governing S corporations, section 6037(c) doesn't expressly remove that jurisdiction, and there-

---

[2] Similar language has since become popular with legislative draftsmen. See Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub. L. 108–27, 117 Stat. 753 (enacting sec. 6429); Economic Growth & Tax Relief Recognition Act of 2001, Pub. L. 107–16, sec. 101(b), 115 Stat. 42 (enacting sec. 6428, originally with regard to an acceleration of the 10-percent income tax rate bracket); Taxpayer Relief Act of 1997, Pub. L. 105–34, sec. 1222(a), 111 Stat. 1008 (enacting secs. 6246(c) and 6241(b)); *id.* sec. 1027(a), 111 Stat. 925 (enacting sec. 6034A(c)). Our decision today will likely subvert these other Congressional commands to the Commissioner to summarily assess.

[3] The majority cites paragraphs 5d and 5e of the amended petition to show that Winter is claiming an overpayment. Majority op. p. 244. But those paragraphs do not allege an overpayment of tax; they allege only an overreporting of income. In his amended petition Winter merely requests that this Court determine there is no deficiency and that the amount shown on his return should be reduced. A review of Winter's tax records submitted by the Commissioner after this case was referred to conference shows that Winter substantially underpaid the taxes he reported on his return. No payment accompanied his return, and his withholding credit was so small as to trigger nearly $50,000 in underwithholding penalties. I do not think the record fairly read supports either an allegation or a finding of actual overpayment jurisdiction in this case.

fore the repeal must have revived it. And finally, the majority concludes that even if "shall" means "shall", the Commissioner did summarily assess inconsistency adjustments against Winter after he filed his petition, and that's good enough.

A.

I begin with the language of section 6037(c), which raises three questions. The first is the meaning of the phrase "adjustment required to make the treatment of the items by such shareholder consistent with the treatment of the items on the corporate return." Section 6037 refers the reader to section 6213, which defines adjustments as changes in the correct amount of tax due. The best reading of section 6037 would then be that "adjustments" to make a shareholder's treatment of an item consistent with his corporation's means adjustments to the amount of tax owed flowing from the inconsistency.

The second question is the meaning of section 6037(c) when it says such consistency adjustments "shall be * * * assessed according to section 6213(b)(1)". Section 6213 again gives the answer: It means assessment on the "basis of what would have been the correct amount of tax but for" the inconsistency. The same section provides that any notice of such an assessment is not a notice of deficiency, the taxpayer receiving such a notice has no right to file a petition with the Tax Court based on such a notice, and assessments and collections of any tax due are not subject to the limits normally imposed on the IRS between the time a taxpayer files a petition with us and the time our decision becomes final.

The final question is: what does section 6037(c)(3)'s last sentence—"Paragraph (2) of section 6213(b) shall not apply to any assessment referred to in the preceding sentence"—mean? Just reading the words should be enough. Paragraph (2) tells a taxpayer how to respond to a math-error notice if he wants an abatement of the assessment followed by an attempt by the Commissioner to reassess. Any such reassessment must, the paragraph says, be subject to "deficiency procedures." By making paragraph (2) inapplicable, section 6037(c) is saying that a taxpayer has no right to abatement of a summary assessment for tax owed due to inconsistent

reporting, and no right to reassessment using "deficiency procedures prescribed by this subchapter." Sec. 6213(b)(2)(A). ("[T]his subchapter" means everything from section 6211 to section 6216, including section 6211's definition of deficiency and section 6215's provision for assessment of deficiencies found by the Tax Court.)

If "shall" means "shall", this means that consistency adjustments have to be assessed under section 6213(b), not adjusted by assessment under sections 6212 and 6213(a) or readjusted under section 6214 or 6512 after a deficiency petition is filed.

I would therefore hold that we lack jurisdiction in a deficiency case to decide the amount of Winter's passthrough income or loss from BFC. The Commissioner had no power to issue a notice of deficiency with respect to this item—and even though he issued one anyway, that doesn't give our Court power to review the adjustments it makes. Congress could of course have written the Code to give the Commissioner more than one way to assess, and sometimes it has. Consider the procedure for correcting tentative carryback adjustments. This, too, is an exception to the restrictions on assessment in section 6213(a). Section 6213(b)(3) governs the problem, and says that the Secretary "*may* assess * * * the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return." (Emphasis added.) A related regulation provides that

The method * * * to recover any amount applied, credited, or refunded in respect of an application for a tentative carryback adjustment which should not have been so applied, credited or refunded is *not an exclusive method.* Two other methods are available to recover such amount: (*a*) By way of a deficiency notice under section 6212; or (*b*) by a suit to recover an erroneous refund under section 7405. * * * [Sec. 301.6213–1(b)(2)(ii), Proced. & Admin. Regs.; emphasis added.]

See generally *Ron Lykins, Inc. v. Commissioner*, 133 T.C. 87 (2009). The difference in wording is obvious—section 6213 uses the word "may", instead of section 6037's "shall", and the related regulation leaves the choice of method up to the Commissioner. There's no regulation like that one here, and so I have to conclude that section 6037(c) makes summary

assessment the exclusive procedure for the Commissioner to use to correct inconsistent reporting like Winter's. [4]

Section 6201(a)(3), governing erroneous refunds sent to taxpayers who overstate the amount of their tax withholdings, is another example showing that Congress knows how to give the Commissioner a choice when it wants to. That section provides that an overstatement "*may* be assessed * * * in the same manner as in the case of a mathematical or clerical error" but also provides that "the provisions of section 6213(b)(2) * * * *shall* not apply." *Id.* (emphasis added). This means that if the Commissioner chooses to summarily assess, the taxpayer has no right to demand an abatement and detour through the deficiency procedures. We looked at the consequences of this for our jurisdiction twenty years ago and concluded:

although actual mathematical or clerical errors that are summarily assessed may become subject to the normal deficiency procedures after abatement, sec. 6213(b)(2)(A), this is not so for the deemed mathematical or clerical errors at issue here. Section 6201(a)(3) expressly provides that abatement is not available for summary assessments of overstated with-held taxes. [*Schlosser v. Commissioner*, 94 T.C. 816, 826 (1990).]

These examples stand in stark contrast to section 6037(c)'s use of "shall". And section 6037(c) isn't unique in limiting the Commissioner to summary assessment under section 6213(b)(1). See secs. 6034A(c) (inconsistent reporting between trust or estate and beneficiary), 6428(f)(1) (adjustment for advance receipt of 2008 recovery rebate, originally enacted in 2001 for an acceleration of ten-percent income tax rate bracket), 6429(d)(1) (adjustment for advance receipt of 2003 child tax credit increase); cf. secs. 6246(c)(1) (rules "similar" to section 6213(b)(1) shall apply to mathematical or clerical error on partnership return), 6241(b) (assessment of inconsistency on partner's return is limited to math-error procedures). Some of these sections prohibit section 6213(b)(2)'s channeling of disagreements into deficiency actions, see secs. 6034A(c), 6241(b), and some of them do not,

---

[4] And while we have held that "it is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a predicate for Tax Court jurisdiction," *Hannan v. Commissioner*, 52 T.C. 787, 791 (1969), the issue here is whether the Commissioner had the power to determine a deficiency that included adjustments to make Winter's return consistent with BFC's. "While a deficiency notice is a necessary requisite to the commencement of a case in this Court, this simply is a procedural precondition and in no way operates to confer jurisdiction upon us over substantive issues." *Bradley v. Commissioner*, 100 T.C. 367, 371 (1993).

see secs. 6428(f)(1), 6429(d)(1). Section 6246(c)(1) has both—generally allowing abatement and deficiency procedures in subparagraph (A) but removing the taxpayer's right in subparagraph (B) when the Commissioner's adjustment is due to inconsistent reporting. The majority states that section 6212 doesn't forbid the Commissioner from including a math-error adjustment in a notice of deficiency. Majority op. p. 243. That's true, and when nothing in the Code says otherwise one could logically conclude that the Commissioner has his choice of procedures. But when the Commissioner makes a consistency adjustment to align a shareholder's return with his S corporation's, section 6037(c) governs. That section says the Commissioner shall assess according to section 6213(b)(1) if the taxpayer failed to file the required statement. In this case, section 6212's silence cannot trump section 6037(c)'s command.

### B.

The majority implicitly disagrees with my view that this case forces us into a close reading of section 6037. It instead begins its analysis of the jurisdictional question by asserting that "[t]he more direct answer to this jurisdiction issue is found in the definition of 'deficiency,'" majority op. p. 246, though it declines to enlighten us on what that direct answer is. If the majority is implying that the consistency adjustment is properly part of the original deficiency determined by the Commissioner simply by definition, then it should say so and explain how this is consistent with sections 6037(c) and 6213(b)(1).

This would be a very tough chore. For, if the majority is right that the consistency adjustment in this case is a deficiency by definition, simply because the Commissioner determined it was, majority op. p. 243, then section 6213(a) would forbid the Commissioner from assessing or collecting it until our decision was final: "No assessment of a deficiency * * * shall be made, begun, or prosecuted * * * if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final." But section 6037(c)'s plain language commands that any adjustment due to inconsistent reporting "*shall* be * * * assessed according to section 6213(b)(1)" and "paragraph (2) of section 6213(b) *shall* not apply." (Emphasis

added.) The general deficiency rules would, in other words, collide head on with section 6213(b)(1), which lifts those restrictions for summary assessments: "nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section." So, if the general deficiency rules apply to consistency adjustments, section 6213(a) commands that any resulting deficiency may not be assessed or collected while a case is pending in our Court, while section 6213(b) commands that assessment of such deficiencies shall *not* be prohibited. These provisions cannot simultaneously apply to the same adjustment. It stands to reason, then, that an item *required* to be assessed under section 6213(b)(1)—without resort to the escape hatch in section 6213(b)(2)—cannot be assessed as a run-of-the-mill deficiency.

Yet, despite the plain meaning of the word "shall" and our repeated recognition of that word's mandatory nature, see, e.g, *Abdel-Fattah v. Commissioner*, 134 T.C. 190, 207 (2010), the majority doesn't hold the Commissioner to Congress's command. Instead, the majority reads other general grants of jurisdiction as overriding section 6037(c)'s specific language.

C.

The majority correctly notes that when we have jurisdiction over part of a taxpayer's tax liability for a particular year, we generally have jurisdiction to decide all the issues necessary to determine the correct tax for that year. Majority op. p. 244. Section 6214 generally gives us jurisdiction over an increase in a deficiency if a petition is properly before us. And section 6512(b) generally gives us jurisdiction to determine that a taxpayer has overpaid his taxes, again assuming a petition is properly before us. Quoting *Russell v. United States*, 592 F.2d 1069, 1072 (9th Cir. 1979), the majority says:

There can be no question that when the taxpayer petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question. A party cannot, in such a case, by failing to raise an issue, or by asking the court not to consider it, escape the Res judicata effect of the decision. This is hornbook law. [Majority op. p. 244.]

Denying that there can be a question about our jurisdiction sort of assumes the answer about whether we have jurisdiction. The quoted passage is, nevertheless, an excellent starting point. The very next sentence in *Russell*, however, says: "We have held that there is an exception to the foregoing well established rule." *Id.* at 1072 (discussing the Tax Court's lack of equity jurisdiction); see also *Domulewicz v. Commissioner*, 129 T.C. 11, 22–23 (2007) (holding that we don't have jurisdiction to hear partner-level defenses to penalties imposed in a partnership-level proceeding, even if we have jurisdiction over other items on the notice of deficiency), affd. in part and remanded on other grounds sub nom. *Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009).

The majority doesn't ask the seemingly inevitable next question of whether section 6037(c) slices out another exception to these general grants of jurisdiction. It does assert that "to read section 6037 as denying our jurisdiction requires inferences that we abandon the literal language of the jurisdictional provisions of the Code and the established caselaw regarding the scope of our jurisdiction." Majority op. p. 245. [5] I certainly don't suggest abandoning section 6213(a), 6214(a), or 6512(b), but rather would read them together with section 6037(c), recognizing the basic principles of statutory construction that "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant,'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)), and that where two statutes conflict, specific laws govern general ones, *Pilaria v. Commissioner*, T.C. Memo. 2002–230 (citing *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961)).

In *Hinck v. United States*, 550 U.S. 501 (2007), a taxpayer filed a claim in the United States Court of Federal Claims under section 6404(e)(1) for abatement of interest. Before 1996, federal courts had held that these claims were not subject to judicial review. But in 1996 Congress explicitly provided for judicial review and additionally said that the Tax

---

[5] As Code sections go, section 6037 is still fairly new and neither it nor any of the even newer sections with identical or similar language, see *supra* note 2, have before now produced any caselaw that the majority, the parties, or I have found analyzing whether our jurisdiction extends to items that Congress directs the Commissioner to summarily assess but which he instead includes in a notice of deficiency.

Court shall have jurisdiction over any action brought by taxpayers who meet certain net-worth thresholds. *Id.* at 503–04.

Hinck recognized that the Code gave the Tax Court jurisdiction in some circumstances, but argued that its silence about the jurisdiction of other courts should not be read as making our jurisdiction exclusive. He urged the Supreme Court to follow the Fifth Circuit's opinion in *Beall v. United States*, 336 F.3d 419, 430 (5th Cir. 2003), which held that the Code's new section, by providing an abuse-of-discretion review standard, meant that IRS decisions denying the abatement of interest were no longer standardless agency decisions necessarily unreviewable according to general principles of administrative law. The Fifth Circuit reasoned that district courts had always had jurisdiction and while the Code may have given the Tax Court jurisdiction of some specific determinations, that didn't mean other courts lacked concurrent jurisdiction. *Id.* at 428–29.

The Supreme Court disagreed. In holding that we had exclusive jurisdiction, the Court said it was governed by "the well-established principle that, in most contexts, "'a precisely drawn, detailed statute pre-empts more general remedies,'" *Hinck*, 550 U.S. at 506 (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007)), and "guided by our past recognition that when Congress enacts a specific remedy when no remedy was previously recognized, or when previous remedies were 'problematic,' the remedy provided is generally regarded as exclusive," *id.* (citing *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 285 (1983)).

Similar reasoning should guide us here. TEFRA originally supplied the Commissioner with procedures to enforce consistent reporting among S-corporation shareholders, including corporate-level remedies for those taxpayers. But after several years, Congress found those remedies to be a problem for entities with a small number of affected shareholders. To fix this, it exempted S corporations from TEFRA, and enacted section 6037(c) in TEFRA's place. Like the statute in *Hinck*, section 6037(c) is narrowly drawn—it affects only S-corporation shareholders who fail to notify the Commissioner of their inconsistent reporting of a subchapter-S item. And it requires assessment through section 6213(b)(1). In this case, because section 6037(c) does not allow a taxpayer to invoke deficiency procedures under section 6213(b)(2), a

taxpayer's established remedy is prepaying the tax and filing a claim for refund.

Following *Hinck*, I think we must reject the argument that silence overrides a limitation on a taxpayer's remedy. Even if the Code's general provisions would give us jurisdiction, where a specific section says otherwise we can't justifiably argue that the general trumps the specific. *Hinck* points us in exactly the opposite direction—that section 6037(c)'s road to assessment is the only one open for the Commissioner for the particular class of adjustments at issue here. See *id.* at 506.

D.

The majority does argue that even if Congress meant what it said when it said the Commissioner "shall" assess according to section 6213(b)(1), the Commissioner satisfied that requirement because he did summarily assess Winter's consistency adjustments, albeit after issuing the notice of deficiency. Majority op. p. 245. But does the Commissioner's postpetition summary assessment somehow give us jurisdiction to readjust those items? The majority implicitly holds that it does—but its failure to analyze the question creates some serious problems in reconciling section 6213(a) and (b)(1).

The problems harken back to the definition of deficiency. Recall that if the consistency adjustment is part of the deficiency, then the Commissioner cannot assess or collect it until our decision becomes final; but if it isn't, then the Commissioner shall make an immediate assessment and demand payment. See *Bregin v. Commissioner*, 74 T.C. 1097, 1102 (1980). There are only two possibilities. The first is that consistency adjustments are a "deficiency" (as the majority, remember, holds at the start of its analysis). But that would make this postpetition summary assessment invalid under the section 6213(a) ban on postpetition assessments. Which would mean the Commissioner still hasn't complied with section 6037(c). The alternative possibility is that consistency adjustments are not a "deficiency". But then we don't have jurisdiction to redetermine them, because their readjustment wouldn't be a redetermination of a "deficiency".

The majority seems to avoid this problem by quoting the definition of "deficiency" as "the amount by which the correct tax imposed by the Code exceeds the amount of tax shown on the return plus the amount of tax previously assessed less any rebates." Majority op. p. 243. This is almost right—section 6211(a) actually says it's the amount "previously assessed (or collected without assessment) as a deficiency" that is relevant. (Using a word in its definition is never helpful, but we shouldn't just lop off the whole phrase without mention.)

We have never directly interpreted in our precedential caselaw what it means for something to be assessed "as a deficiency." [6] In *Heasley v. Commissioner*, 45 T.C. 448, 458 (1966), we suggested that an amount summarily assessed due to a math error could be considered either as an amount shown on a return, or as an "amount assessed as a deficiency for which no notice was required." In *Acme Steel Co. v. Commissioner*, T.C. Memo. 2003–118, we suggested in dicta that a summary assessment is an assessment as a deficiency. But, in distinguishing between summary and deficiency assessments, the Seventh Circuit (where an appeal in this case would lie) has held that "unlike a summary assessment, a deficiency assessment requires the IRS to follow a number of statutory steps before it may undertake to collect the deficiency." *Murray v. Commissioner*, 24 F.3d 901, 903 (7th Cir. 1994). Under *Murray*, an amount assessed as a deficiency seems to be limited to an amount that was subject to the deficiency procedures. I don't resolve this issue, but only point out that the majority's assertion is sound only if a summary assessment is *not* one assessed as a deficiency.

A related difficulty is that section 6211(a) doesn't specify from which date something is "previously assessed"—the date of the notice of deficiency, the date of our decision, or some other date? The majority does address this problem and holds that we redetermine deficiencies as of the date of our decision, so "previously assessed" means assessed before our decision. Majority op. note 4. So, according to the majority, a deficiency would reflect any amounts summarily assessed after the petition is filed and while the case is pending. The

---

[6] In *Lawless v. Commissioner*, T.C. Summary Opinion 2001–178, we determined that an assessment not made in accordance with the deficiency procedures was not previously assessed "as a deficiency." But because this was a Summary Opinion, we do not rely on it.

majority, however, then offhandedly notes that the effect of our decision is to allow the Commissioner to "assess" (by which I think it means "reassess" or "abate and reassess") the deficiency we just redetermined. Majority op. note 4.

Reading "previously assessed" to mean "assessed before we enter a final decision" may look uncontroversial. But it may lead to some strange results if we're not careful in analyzing whether the Commissioner's summary assessment is an "[amount] previously assessed * * * as a deficiency." The majority opinion is deeply ambiguous on this point. But consider the two alternatives. The first is that the summary assessment makes the consistency adjustments in this case "an amount of tax previously assessed as a deficiency." But that would mean—because the Code excludes such amounts from section 6211(a)'s definition of deficiency—that we don't have jurisdiction to redetermine it. [7]

The second alternative is that an amount that is summarily assessed is not "an amount of tax previously assessed as a deficiency." This would solve the jurisdictional problem from the majority's perspective—our decision would allow the Commissioner to assess the full deficiency we redetermine, as the majority puts it in note 4. But then what effect would a summary assessment have?

Look at a simplified example. Recall the definition of deficiency. In algebraic form, $d = t - (s + a)$, where deficiency (d) equals the actual tax imposed by the Code (t) less the total tax shown on the return (s) plus prior assessments as a deficiency (a). [8] See *Estate of Branson v. Commissioner*, 113 T.C. 6, 37–38 (1999) (Beghe, J., concurring), affd. 264 F.3d 904 (9th Cir. 2001). Imagine an S-corporation shareholder—let's call her Spring. Assume the tax imposed by the Code on Spring's income in 2002 is $1,000, but she only reported $400 on her return. Of the remaining $600, $550 is due to inconsistent reporting of her passthrough income from her S corporation and $50 is due to unreported dividend income.

---

[7] Things get even stranger if one imagines a case like Winter's, except that the only contested items are consistency adjustments. The majority would presumably hold that we have jurisdiction once a petition is filed challenging consistency adjustments determined in a notice of deficiency. But would we then lose jurisdiction as soon as the Commissioner summarily assesses the precise amount at issue? Or would we be forced to enter a decision of no deficiency because a summary assessment would become—at any time before entry of decision—"an amount of tax previously assessed as a deficiency?"

[8] Winter's case doesn't involve any rebates or collections made without assessments, so I exclude them.

Spring neglected to file a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request, but the Commissioner issued a notice of deficiency instead of summarily assessing, and he included both the consistency adjustment and the dividend income. Spring timely petitioned the Tax Court. Later, but before our decision, the Commissioner summarily assessed the tax due to the inconsistently reported income.

Thinking through the implications of the majority's assertion that a summary assessment is an "amount previously assessed" if it's made before the date of our decision—and if a summary assessment is considered an "amount previously assessed * * * as a deficiency," Spring's deficiency would be $50. Her true tax ($1,000) minus the sum of her self-reported tax ($400) plus any amount previously assessed as a deficiency ($550) is $50. In pure numbers: $1,000 − ($400 + $550) = $50. Not coincidentally, this is the same amount of tax due to her unreported dividend income which has not already been assessed. It also quite clearly does not include the $550 amount summarily assessed. So if summary assessments are considered amounts previously assessed as a deficiency, then they are not part of the current deficiency and we don't have jurisdiction to redetermine them. (And this dissent would be a concurrence.)

If this is not true—if a summary assessment is not considered an "amount previously assessed * * * as a deficiency"—Spring's deficiency would be $600. Her true tax ($1,000) minus the sum of her self-reported tax ($400) plus any amount previously assessed as a deficiency ($0) is $600. Again, in numbers: $1,000 − ($400 + $0) = $600. This suggests that both the consistency adjustment and the unreported dividend income are part of the deficiency and we have jurisdiction to redetermine both. (The majority's holding, after all, is that we do have jurisdiction to redetermine the Commissioner's summarily assessed consistency adjustments to Winter's tax bill.)

The problem here is that the majority says the effect of its holding is to allow the Commissioner to assess Spring's newly determined deficiency of $600. This potentially leaves Spring with quite a tax bill. She has reported $400, which was undoubtedly assessed as required under section 6201(a)(1), and the Commissioner summarily assessed $550

after she petitioned the Tax Court (thereby complying with the provision of section 6037), and now the Commissioner has permission to assess another $600. Although the actual tax imposed by the Code is $1,000, the majority's reading would allow the Commissioner to assess $1,550. One might hope that, in his mercy, the Commissioner would not press the majority's logic to its double-counting extreme and would provide some kind of relief if different parts of the bureaucracy inadvertently acted to produce such a result. But I think it generally unwise to read the Code in a way in which a sensible result depends on the forbearance of one of the parties.

One may also suggest that we have the authority under section 6213(a) to order the Commissioner to abate the summary assessment or enjoin collection, but the Code removes that power when the Commissioner summarily assesses under section 6213(b)(1) ("nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section"). It would be best to avoid such a muddle.

### E.

Turning now to some arguments that the parties alone made, I first address the Commissioner's argument that if summary assessment is his exclusive avenue under section 6037, a shareholder's only recourse is to sue for a refund in district court, which may lead to *res judicata* trouble. A problem might arise, he says, if the taxpayer has to bring two suits to redetermine liability for the same tax year: one in the Tax Court in response to the notice of deficiency and one in district court in response to a summary assessment. He argues that because the taxpayer's 2002 tax year is a single cause of action, see *Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948), Winter must be able to bring all issues relating to the determination of his income tax liability before us or be forever barred from doing so.

I disagree. Section 6212(c)(1) says that the IRS can't issue a notice of deficiency for a tax year that is already the subject of litigation in the Tax Court. A math-error notice, however is, by definition, not a notice of deficiency. Secs. 6212(c)(1), 6213(b)(1); cf. *Jefferson Smurfit Corp. v. United States*, 439 F.3d 448, 453 (8th Cir. 2006) ("Congress intended to exclude * * * [the assessments listed in section 6212(c)(1)]

from the general policy of finality"). The Code therefore allows the IRS to issue both a notice of deficiency and a math-error notice for the same tax year without the first barring the second. I think it unlikely that cases arising from section 6037(c)—with its cross-reference incorporating math-error procedures under section 6213(b)(1)—would somehow end up being treated differently.

The Code has a somewhat similar rule in section 6512(a). That section says that a taxpayer cannot petition our Court and then seek a refund for the same tax year in district court. But there is an exception: Section 6512(a)(2) allows a taxpayer to pursue a refund "as to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final." See also sec. 301.6512–1(e), Proced. & Admin. Regs. If the Commissioner were to summarily assess a consistency adjustment following a final decision of the Tax Court for the same tax year (but related to other items), anything that he collected as a result of the summary assessment would fit snugly within this provision. This is especially true if one reads section 6512(a)(2) together with section 6213(b)(1)'s command that a math-error notice "shall not be considered as a notice of deficiency for the purposes * * * of section 6512(a)"—meaning that a taxpayer who is issued a deemed math-error notice may still pay and then pursue a refund in a refund court.[9]

Section 7422(e) likewise prevents two courts from having jurisdiction over the same tax year at the same time. But in *Hemmings v. Commissioner*, 104 T.C. 221, 229 (1995), we said that this section "does not prohibit two actions involving the same taxable year from being litigated seriatim." Requiring the IRS to use summary assessment to adjust the portion of Winter's tax liability arising from inconsistent

---

[9] There are also situations where the Tax Court can become a refund court. Section 6512(a) requires a taxpayer who has a potential refund claim and who has received a notice of deficiency and who wants to contest that notice in the Tax Court to file a case here that both contests the alleged deficiency and makes the case for a refund. But that's not Winter's case—he paid nothing after the summary assessment, and doesn't allege that he overpaid before.

Judge Halpern's hypothetical consistency adjustment in a taxpayer's favor—an overlooked flowthrough charitable deduction offsetting an uncontested increase in unreported and unrelated dividend income—hardly undermines this analysis. A consistency adjustment (or a net consistency adjustment of several items) in a taxpayer's favor would not trigger an assessment, it would trigger a refund. Sec. 601.105(a), Statement of Procedural Rules. (Math errors in taxpayer's favor trigger refunds.) The prohibition on a taxpayer's use of deficiency procedures to contest such an assessment would not apply—section 6037(c)(3)'s last sentence refers only to "assessments," not all possible deemed math errors.

reporting would square with both a plain reading of section 6037(c) and the Code's related procedural requirements. And our related caselaw agrees—we held in *Trost v. Commissioner*, 95 T.C. 560, 566 (1990), that *res judicata* does not block us from deciding an issue when a taxpayer could not have raised it in an earlier case because we lacked jurisdiction. See also *Ron Lykins*, 133 T.C. at 109; *Vines v. Commissioner*, T.C. Memo. 2009–267.

### F.

The Commissioner finally argues that it would be more efficient to consolidate in one proceeding all the issues that Winter is raising. I don't necessarily disagree, [10] but sometimes cracking one tax year into two cases is just what the Code requires. Our opinion in *Tigers Eye Trading, LLC v. Commissioner*, T.C. Memo. 2009–121, is an example. We described in *Tigers Eye* how Congress intentionally bifurcated penalty proceedings under TEFRA, giving us jurisdiction to decide liability for the penalties at the partnership level, and shooing partners who say they have defenses against those penalties to separate refund suits, even when we have before us a partner-level case on other items related to the same year and the same taxpayer. Sec. 6221; sec. 301.6221–1(c), Proced. & Admin. Regs. And jurisdiction splits aren't limited to the partnership-partner context. See *Hinck*, 550 U.S. at 509 (finding "nothing tellingly awkward" about sending interest abatement and refund claims to two different courts "even if in some respects it 'may not appear to be efficient'"); *Ron Lykins*, 133 T.C. at 109 (finding a constellation of Code sections work together to permit a taxpayer to split his claim into two Tax Court proceedings as related to tentative carryback refunds); *Odend'hal v. Commissioner*, 95 T.C. 617, 622 (1990) (rejecting conven-

---

[10] Although the Commissioner argues that splitting the claim would not be efficient, in the past the IRS has noted how much more expensive it is for the Commissioner to maintain a deficiency case than to summarily assess. S. Rept. 94–938, at 375 (1976). In a deficiency case, for example, the taxpayer may get two prepayment bites at the apple—one following the notice of deficiency to establish the liability and another following a notice of determination after the Commissioner tries to collect. If the Commissioner summarily assesses, the taxpayer has to prepay to contest the liability, thus bypassing the collection trial, or alternatively will only be able to contest the collections without paying, thus bypassing the liability trial. So it's not even clear that the benefits from a consolidated trial would outweigh the efficiency of summary assessment—especially in cases like this one where the items not subject to summary assessment were small and conceded.

ience-of-the-forum argument because the language of now-repealed section 6621(c)(4) gave the Tax Court only limited jurisdiction over interest determination). This might not be efficient, but policy can't override plain language.

G.

We do sometimes depart from a literal reading of a statute when the related legislative history shows clear but contrary legislative intent. See *Domulewicz*, 129 T.C. at 22 (citing *Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *United States v. Am. Trucking Associations*, 310 U.S. 534, 543 (1940)). But in its only argument explicitly mentioning section 6037(c), the majority looks to legislative history to find support *for the plain meaning* and, finding none, decides Congress could not have meant what it said.

The majority contends that because Congress removed S corporations from TEFRA, it would be inconsistent with legislative history to "assume that Congress intended to eliminate S corporation items from the deficiency jurisdiction of this Court * * * because there is no provision for a separate judicial determination of the inconsistently reported item." Majority op. p. 245. The majority misreads my point—I don't suggest that we reinstitute a corporate-level proceeding in the Tax Court for S corporations. Instead, section 6037(c) penalizes taxpayers who fail to file Form 8082 by stripping them of a prepayment forum (and consequently stripping us of jurisdiction).[11] The majority forgets that taxpayers who cannot petition our Court may still find relief by paying the disputed tax and petitioning a district court or the Court of Federal Claims—so there is a provision for a separate judicial determination of the inconsistently reported item, it's just not with us. And this scheme would be consistent with the legislative history which demonstrated Congress's desire, despite removing the entity-level proceeding, to ensure

---

[11] Winter might be able to petition our Court and contest his tax liability in one narrow circumstance: In *Perkins v. Commissioner*, 129 T.C. 58 (2007), a taxpayer who received a math-error notice didn't use the abatement procedures available to him. We held that he could challenge the underlying tax liability at his later collection due process appeal to our Court because he had had no prior opportunity to contest it. *Id.* at 64–67. We need not now decide *Perkins*'s effect on Winter's case.

consistency among S corporations and their shareholders. See S. Rept. 104–281, at 51.

The majority also implies that section 6037(c) couldn't be about our jurisdiction because it doesn't use the word "jurisdiction." Majority op. p. 245. But when our jurisdiction depends on a notice of deficiency, we must look at statutes limiting the use of those notices as inherently about our jurisdiction.

We've been through this before. In *Ewing v. Commissioner*, 118 T.C. 494, 503–504 (2002), revd. 439 F.3d 1009 (9th Cir. 2006), superseded by statute, Tax Relief and Healthcare Act of 2006, Pub. L. 109–432, sec. 408, 120 Stat. 3061, as recognized in *Ware v. Commissioner*, T.C. Memo. 2007–112, we reasoned that we had jurisdiction over innocent-spouse cases before the 2000 amendment to section 6015(e), that that amendment and its legislative history didn't mention jurisdiction, and so concluded that we still had jurisdiction after the amendment became effective. In *Petaluma FX Partners, LLC v. Commissioner*, 131 T.C. 84, 100 (2008), affd. in part and revd. in relevant part 591 F.3d 649 (D.C. Cir. 2010), we reasoned that we had jurisdiction despite literal language to the contrary, because we needn't turn "a blind eye" to an easily answered question.

This just doesn't work out well for us. See *Commissioner v. Ewing*, 439 F.3d 1009, 1014 (9th Cir. 2006) ("Tax Court simply has written the language out of the statute"), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004), superseded by statute, Tax Relief and Healthcare Act of 2006, Pub. L. 109–432, sec. 408, 120 Stat. 3061, as recognized in *Ware*, T.C. Memo. 2007–112; *Bartman v. Commissioner*, 446 F.3d 785, 787 (8th Cir. 2006) (same), affg. in part and vacating in part T.C. Memo. 2004–93, superseded by statute, Tax Relief and Healthcare Act of 2006, Pub. L. 109–432, sec. 408, 120 Stat. 3061, as recognized in *Ware*, T.C. Memo. 2007–112; see also *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d at 655 ("that a determination seems obvious or easy does not expand the court's jurisdiction").

And in other cases we have found statutes not using the magic word "jurisdiction" to still limit ours. For example, in *New Millennium Trading, L.L.C. v. Commissioner*, 131 T.C. 275, 280 (2008), we read sections 6230 and 6221 together to mean that partners can challenge partnership-level penalties

only in refund actions, though neither of these sections uses the word "jurisdiction" in the relevant provisions. And in *Domulewicz*, 129 T.C. at 23, we even read these provisions to defeat our supplemental jurisdiction under section 6214(a). Like section 6230, section 6037(c) limits the parties involved to nondeficiency procedures—it first says the Commissioner shall assess according to section 6213(b)(1) (which doesn't involve deficiency procedures), and then it says that a taxpayer can't resort to section 6213(b)(2) to invoke deficiency procedures, either.

To summarize, section 6037 governs the audit and litigation procedures that replaced TEFRA for S corporations. It imposes duties on both the Commissioner and the shareholder. The shareholder who wants to avoid summary assessment and keep open his door to the Tax Court has a duty to either report subchapter S items consistently or file an extra form with his return telling the Commissioner he isn't. None of our general grants of jurisdiction nullify this specific statute.

## II.

If we were to respect Congress's choice of the word "shall", we would have to determine which items on Winter's return were required to be summarily assessed. Although we've been discussing Winter's passthrough income from BFC, the statute actually imposes a consistent reporting duty for any "subchapter S item." Sec. 6037(c)(1). Section 6037(c)(4) defines a subchapter S item as "any item of an S corporation" that the regulations say is "more appropriately determined at the corporation level than at the shareholder level." So I would look to each contested item to determine if it meets that definition. The contested items include:

- Winter's passthrough income from BFC;
- proper timing for BFC's deduction of Winter's bonus;
- characterization and timing of Winter's bonus;
- Winter's share of BFC's charitable contributions; and
- any related penalties.

I'll address them in order.

*Winter's Passthrough Income*

The relevant regulation tells us that subchapter S items include "[t]he S corporation aggregate and each shareholder's share of * * * [i]tems of income, gain, loss, deduction, or credit of the corporation." Sec. 301.6245–1T(a)(1),[12] Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987). The regulation's plain language therefore makes Winter's overall passthrough income or loss from BFC a subchapter S item. I would therefore hold that we lack jurisdiction in a deficiency case to decide the amount of Winter's passthrough income or loss from BFC.

*Proper Timing for BFC's Deduction of Winter's Bonus*

Whether BFC should have deducted Winter's bonus in full on its 2002 return is an item of deduction of the corporation, and therefore it, too, is a subchapter S item. See *id.* If Winter was right and BFC was wrong, Winter's remedy was to report it correctly on his return and file a Form 8082, alerting the Commissioner to BFC's error and the inconsistency created by his correction. Winter didn't do this, so I would leave this question to a refund forum as well.

*Characterization and Timing of Winter's Bonus*

Winter was not only a shareholder of BFC but also an employee. When he filed his 2002 return, he reported his entire prepaid bonus as taxable employee income, which was consistent with the W–2 Builders sent to him. But now Winter claims only a portion of the bonus should be taxable in 2002 either because it was really a loan and not income (the characterization issue); or, if it was income, because he did not have unrestricted access to it and so should not be taxed on it until some later year (the timing issue).

This item isn't in the notice of deficiency, but that doesn't matter. This is an instance where Winter argues that he overpaid his 2002 taxes, and section 6512(b) generally gives us jurisdiction over such claims. But unlike the majority I would take an additional step to ensure that this general power isn't subject to a specific exception tucked into section 6037(c). If the character or timing of Winter's bonus is a sub-

---

[12] Section 6037(c)(4) was previously codified as section 6245, but this related temporary regulation was not renumbered.

chapter S item and he did not report consistently with BFC's return, then I would hold that we don't have jurisdiction over this issue either.

The first step is to decide whether the character of the bonus (as compensation or a loan) is a subchapter S item. I look again to the regulation, which says that subchapter S items include:

(5) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the corporation is required to make with respect to an amount, [or] the character of an amount, * * * for purposes of the corporation's books and records or for purposes of furnishing information to a shareholder.

* * * * * * *

(c) Illustrations—(1) In general. This paragraph (c) illustrates the provisions of paragraph (a)(5) of this section. * * * The critical element is that the corporation is required to make a determination with respect to a matter for the purposes stated * * *.

* * * * * * *

(3) Distributions. For purposes of its books and records, or for purposes of furnishing information to a shareholder, the S corporation must determine:

(i) The character of the amount transferred to a shareholder (for example, whether it is a dividend, compensation, loan, or repayment of a loan) * * *

[Sec. 301.6245–1T, Temporary Proced. & Admin. Regs., *supra*.]

So the regulation says if the S corporation has to determine the character of an item for its own purposes, then it's a subchapter S item. The regulation gives us examples of what an S corporation has to decide for its own purposes—including the characterization of amounts transferred to shareholders. BFC was required to make a determination at the corporate level as to whether the payment to Winter was a loan or prepaid compensation—and it did so by treating the amount as compensation. Thus the characterization of Winter's bonus as a loan or compensation again fits within the definition of a subchapter S item. Winter thus had a duty to report this item consistently with BFC's characterization or file a Form 8082.

But he did his duty. Winter and BFC each reported the bonus as compensation and not a loan. Although BFC didn't claim a current deduction for the entire amount of the bonus, it treated the payment as a corporation should treat a par-

tially prepaid bonus (or so the IRS thought when it accepted BFC's return as filed): by claiming the earned portion of the bonus as a deduction in 2002, reporting the rest as either prepaid wages or a decrease in retained earnings, and by reflecting the entire amount on Winter's W–2. Winter likewise reported the income as a cash-basis taxpayer should report a prepaid bonus—with the entire amount taxed in the year received, as reported on his W–2. Therefore, even though he now argues that he treated it incorrectly, Winter reported consistently with the way BFC did and did not lose his access to the Tax Court.

If we find Winter's bonus payment was income, we also must decide whether Winter reported the income in the appropriate year. And so again we must analyze whether Winter's timing is a subchapter S item. Our trusty regulation tells us that even factors that affect the determination of subchapter S items are subchapter S items. It says: "The term 'subchapter S item' includes * * * the legal and factual determinations that underlie the determination of the existence, amount, *timing,* and characterization of items of income, credit, gain, loss, *deduction,* etc." Sec. 301.6245–1T(b), Temporary Proced. & Admin. Regs., *supra* (emphasis added). At least some of the legal and factual determinations we must consider in deciding when Winter's bonus was taxable to him correspond to factors dictating BFC's treatment of the payment at the S corporation level (whether he had an unrestricted right to the money in 2002, for example). The timing of Winter's payment is also a subchapter S item and section 6037(c) applies. [13]

But again Winter's reporting was consistent with BFC's return. Though Winter now contests it, both he (on his tax return) and BFC (in the W–2) originally reported the income as an unrestricted payment, taxable to him entirely in 2002. Therefore, Winter has met his consistent-reporting duty, and I would hold that we have jurisdiction over this issue.

---

[13] It may seem anomalous that the timing of an employee's income recognition is a subchapter S item and thus considered more appropriately determined at the corporate level. The regulation is quite broad, however, and the proper timing for Winter's receipt of the money hinges on its characterization. Its characterization could in turn affect BFC's treatment of the payment, which is a determination in turn to be made at the corporate level.

I also note that if Winter's timing issue is not a subchapter S item, then he didn't have a duty to report consistently and we would have jurisdiction anyway.

*Winter's Share of Charitable Contributions*

An S corporation can make charitable contributions, but it doesn't deduct them when calculating its income. See sec. 301.6245–1T(a)(1)(ii), Temporary Proced. & Admin. Regs., *supra*. Instead, it notifies its shareholders of their pro-rata share so each may deduct his portion on their individual return, subject to each shareholder's individual limits on charitable giving. See, e.g., sec. 170(b).

On the K–1 that it sent to Winter, BFC listed $5,062 as his share of its charitable contributions. Winter did not claim this deduction on his return, and the Commissioner questioned in his pretrial brief whether Winter should now be able to.

The regulation tells us that each shareholder's share of "expenditures by the corporation not deductible in computing its taxable income (for example, charitable contributions)" is a subchapter S item. Sec. 301.6245–1T(a)(1)(ii), Temporary Proced. & Admin. Regs., *supra*. Winter's proper share of BFC's charitable contributions is therefore a subchapter S item, but because he neither reported that item consistently with BFC's return nor notified the Commissioner about his deviation, we should have no jurisdiction to decide this issue.

*Related Penalties*

The last issue we would need to resolve is whether Winter owes a penalty. The jurisdictional problem here makes this issue particularly murky. No one contests that we have jurisdiction over the interest, dividend, and gambling income that Winter left off his return and therefore we have jurisdiction over any related penalty as well, see sec. 6665(a)—absent direction to the contrary of course, see *Domulewicz*, 129 T.C. at 23.

If we didn't find jurisdiction over Winter's inconsistent reporting, however, we would still have to decide whether we have jurisdiction over the related penalties (whether for negligence or substantial understatement). Looking first to the Code, section 6665(a) says:

Except as otherwise provided in this title—

(1) [T]he additions to the tax, additional amounts, and penalties provided by this chapter[14] shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes * * *.

We have interpreted this section to mean that, absent some exceptions to the general rule, an addition to tax measured by a tax deficiency is subject to deficiency procedures. See *Meyer v. Commissioner*, 97 T.C. 555, 560 (1991); *Estate of DiRezza v. Commissioner*, 78 T.C. 19, 25–27 (1982). By contrast, the Commissioner may summarily assess penalties or additions to tax measured by self-reported income on a taxpayer's return—again unless the Code says otherwise. *Meyer*, 97 T.C at 559; *Estate of DiRezza*, 78 T.C. at 29. The Third Circuit summarized it well:

Thus, the Code logically provides that where the penalty is measured by a tax deficiency it is subject to the same procedure as the deficiency, for if the deficiency is revised by the Tax Court the penalty will be revised along with it. * * * If self-returned taxes are collected without the issuance of * * * [notices of deficiency], it follows simpliciter that none are required for delinquency penalties measured thereon. [*United States v. Erie Forge Co.*, 191 F.2d 627, 630–31 (3d Cir. 1951).[15]]

We have usually addressed this issue in the context of penalties measured by a deficiency determined by the Commissioner (which are subject to deficiency procedures) versus penalties measured by self-reported taxes (which are summarily assessed). But Winter's case is subtly different—what do we do with penalties measured by an asserted deficiency made by the Commissioner that is not subject to deficiency procedures?

In *Estate of DiRezza*, the taxpayer agreed to the Commissioner's adjustment but not an addition to tax[16] measured by that adjustment. *Estate of DiRezza*, 78 T.C. at 21–22. The Commissioner therefore sent a notice of deficiency that asserted an addition to tax but determined no underlying

---

[14] Section 6665 is in chapter 68, which includes the Commissioner's asserted section 6662 penalties.

[15] Though the Third Circuit was construing the Internal Revenue Code of 1939, Congress wrote section 6659 in 1954 to "conform to the rules under existing law." *Estate of DiRezza*, 78 T.C. at 28 (reviewing relevant legislative history). Section 6659 later became section 6665.

[16] Section 6665(a) treats additions to tax and penalties identically so we compare the additions to tax in *Estate of DiRezza* to the penalties here. *Estate of DiRezza* later relies on section 6659(b) (now section 6665(b)), but this section by its terms relates only to additions to tax and so we won't discuss it here.

deficiency. We nevertheless held that we had jurisdiction under section 6659 (a near identical predecessor to section 6665), because the addition to tax was "attributable to a deficiency." *Id.* at 25. We noted that "section 6659(a) sets forth the general rule that the *deficiency* procedures applicable to income * * * taxes are equally applicable to additions to tax." *Id.* at 26 (emphasis added). This made sense at the time because we (and the legislative history we reviewed) contemplated a tax world divided into only two parts: tax assessed on income self-reported on a return and tax assessed after the Commissioner sent out a notice of deficiency. *Id.* at 27. We didn't consider Winter's situation, where an adjustment might not be subject to deficiency procedures.

And it isn't surprising that we didn't discuss it—the Code sections that deny taxpayers access to deficiency procedures for such adjustments were enacted more than fourteen years after we decided *Estate of DiRezza*. See Taxpayer Relief Act of 1997, Pub. L. 105–34, sec. 1222(a), 111 Stat. 1008 (enacting sections 6246(c) and 6241(b)); *id.* sec. 1027(a), 111 Stat. 925 (enacting section 6034A(c)); SBJPA sec. 1307(c)(2), 110 Stat. 1781 (enacting section 6037(c) in 1996). [17]

We also said in *Estate of DiRezza*, 78 T.C. at 29, that the legislative history showed "that Congress intended to exclude from the deficiency procedures only those additions which are attributable to the tax shown on the return." In the light of the more recent statutory requirements for the Commissioner to summarily assess certain adjustments, however, I would now find that statement to be too narrow. When we read section 6665(a) as making deficiency procedures the default option when it comes to asserting penalties, we were implicitly reading the word "deficiency" into the Code where it didn't appear. Section 6665(a) actually says only that penalties will be assessed and collected in the same manner as taxes. And where there is more than one way to assess taxes, I would hold that the Code commands the Commissioner to assess and collect any penalty in the same manner as the related tax—whether by deficiency procedures or summary

---

[17] Section 6201(a)(3), allowing the Commissioner to summarily assess overstated withholdings and denying abatement procedures, was in place when we decided *Estate of DiRezza*. A few years before, however, we had decided that overstated withholdings aren't deficiencies under section 6211, and so are not subject to deficiency procedures. *Bregin v. Commissioner*, 74 T.C. 1097, 1105 (1980).

assessment. I see no reason why the logic regarding penalties related to self-reported income should not extend to other taxes required to be summarily assessed.

Therefore, unless the Code says otherwise, I would hold that the jurisdiction for the penalty follows the jurisdiction for the related tax. This makes sense. For us to find negligence or substantial understatements where we had no jurisdiction over the underlying issue would require us to improperly conclude that there was an understatement in the first place. And if we sustained a negligence penalty and Winter later pursued his case in a refund forum, our opinion would be merely advisory. Further, a substantial understatement penalty is purely computational and based on the amount of the total understatement, which in my view we have no jurisdiction to determine. See *Petaluma FX Partners*, 591 F.3d at 655–56 (finding itself "unable to uphold" the penalty determinations in a Tax Court partnership proceeding where the penalties could not be computed without a separate partner-level proceeding). I would therefore hold that Winter's penalties relating to his inconsistent reporting, like the inconsistently reported items themselves, are not subject to deficiency procedures; and it follows that we lack jurisdiction over them. Sec. 6213; *Meyer*, 97 T.C. at 562.

My conclusion in this case might involve more work than the majority's rolling of all issues into a single deficiency case, but I prefer to respect the plain language of the statute. Some may also find my reading harsh—it would require S corporation shareholders who fail to notify the Commissioner that they are taking a position inconsistent with their corporations to prepay their taxes before disputing them.

But we live in a textualist world, and the text requires this result. A general grant of jurisdiction need not be specifically repealed, a limitation on jurisdiction need not be specially noted in legislative history, we need not have to discern some good policy reason or purpose in the words of the Code that—even inadvertently—limit our power in a particular case or over a particular issue or (as here) over any "adjustment required to make the treatment of the items by

such shareholder consistent with the treatment of the items on the corporate return." Sec. 6037(c).

I respectfully dissent.