GRAPHIC BUSINESS SYSTEMS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; VRE, INC., VISIBLE RECORD EQUIPMENT CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graphic Business Systems, Inc. v. Commissioner
Docket Nos. 5125-78 and 5126-78.
United States Tax Court
T.C. Memo 1982-167; 1982 Tax Ct. Memo LEXIS 583; 43 T.C.M. (CCH) 957; T.C.M. (RIA) 82167; March 30, 1982. *583 (1) Graphic and its three major shareholders were sued for $ 1,050,000, an accounting of profits, and an injunction. The four defendants counterclaimed for an aggregate of $ 1,340,283.42. The suit was settled by Graphic paying $ 5,000 to the plaintiff; Graphic also paid the defendants' attorney's fee of $ 650. Held: Graphic may deduct its payments in full. (2) Graphic owned 70 percent of the outstanding stock of VRE. The remaining 30 percent was owned by R, who was unrelated to the shareholders of Graphic. Held: the 80-percent requirement of section 1563(a)(2)(A), I.R.C. 1954, is not satisfied; accordingly, Graphic and VRE are not members of a brother-sister controlled group under section 1563(a)(2), I.R.C. 1954. United States v. Vogel Fertilizer Co., 455 U.S.     (Jan. 13, 1982). Paul A. Tscholl, for the petitioners. John P. Graham, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal corporate income tax against petitioners as follows: Calendar
Petitioners
Docket No.
Year
Amount
Graphic Business Systems, Inc.
5125-78
1974
$ 5,440.00
1975
186.22
VRE, Inc., Visible Record
5126-78
1974
6,279.76
Equipment Co.
1975
6,750.00
These cases have been consolidated for trial, briefs, and opinion. After concessions by both sides, the issues for decision are: (1) Whether petitioner Graphic Business Systems, Inc., is entitled to deduct payments for legal fees and settlement of litigation in amounts greater than those allowed by respondent; and (2) Whether petitioners are members of a brothersister controlled group under section 1563(a)(2). [1]
FINDINGS OF *586 FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. Petitioner Graphic Business Systems, Inc. (hereinafter sometimes referred to as "Graphic"), was incorporated under the laws of the State of Ohio on March 30, 1971. Petitioner VRE, Inc., Visible Record Equipment Co. (hereinafter sometimes referred to as "VRE") was incorporated under the laws of the State of Ohio on or about May 1, 1974. When the petitions in these cases were filed, Graphic's principal place of business was in North Canton, Ohio, and VRE's principal place of business was in Malvern, Ohio. Before Graphic was incorporated, Laurence A. Merriman, Glenn E. Woodson, and Thomas H. McClendon (hereinafter sometimes referred to as "Merriman", "Woodson", and "McClendon", respectively) were employed by Arnold Graphic Industries, Inc. (hereinafter referred to as "Arnold"), a manufacturer and retailer of business forms and related products. Merriman was Arnold's executive vice-president, Woodson was Arnold's vicepresident in charge of finance and administration, and McClendon was a sales representative for Arnold. Early in 1971, Merriman *587 was fired by Arnold. About the same time, Woodson terminated his employment with Arnold because of difficult working conditions. Merriman and Woodson then organized and incorporated Graphic to engage in the business of selling business forms. Thereafter, Merriman and Woodson were employed by Graphic. Within a few months, McClendon also left Arnold and joined Graphic as a shareholder and employee. Some time later, another former employee of Arnold, Steve Cepin (hereinafter referred to as "Cepin"), was employed as a salesman for Graphic; a small amount of Graphic's stock was sold to Cepin after a while. On October 4, 1971, Arnold filed a complaint in the Court of Common Pleas, Summit County, Ohio, against Merriman, Woodson, McClendon, and Graphic. Arnold sought damages aggregating $ 1,050,000, an accounting, and an injunction, as follows: COUNT NO. 1
4. With the view of destroying or substantially impairing plaintiff's [Arnold's] business, the individual defendants [Merriman, Woodson, and McClendon], during the term of their employment with the plaintiff and afterwards, acting in concert with themselves and others and defendant, Graphic Business Systems, Inc. [Graphic], *588 conspired to and organized or had an interest in such business firm or others and engaged in competition with the plaintiff; solicited away a number of plaintiff's salesmen by coercion and deriding the plaintiff; and took with them and used confidential information and property belonging to the plaintiff in the nature of sales data and activities, territory data and customer preferences and records. Upon information and belief, plaintiff states that it was thereby deprived of profits in the amount of at least Two Hundred Fifty Thousand Dollars ($ 250,00.00), in which amount it has been damaged by the defendants. COUNT NO. 2
5. During the term of their employment by the plaintiff, in violation of their duties and for their personal gain and self-interest, the individual defendants, acting in concert with themselves and others, conspired to obtain and not place orders with this plaintiff for the same or similar products handled by plaintiff, and to grant such orders to Graphic Business Systems, Inc. Plaintiff was thereby deprived of profits which it would have realized on such business. Upon information and belief, plaintiff states that its said loss of profits was in the *589 amount of at least One Hundred Fifty Thousand Dollars ($ 150,000.00), in which amount it has been damaged by the defendants. COUNT NO. 3
6. During the term of their employment by plaintiff, in violation of their duties and for their personal gain and self-interest, the individual defendants, acting in concert with themselves and others, conspired to undermine the confidence of employees and customers of the plaintiff until the time that they left its employ and, thereupon, obtained orders for competing firms or for defendant, Graphic Business Systems, Inc. for products sold by plaintiff. Plaintiff was thereby deprived of profits from such business. Upon information and belief, plaintiff states that its said loss of profits was in the amount of at least One Hundred Fifty Thousand Dollars ($ 150,000.00), in which amount it has been damaged by the defendants. COUNT NO. 4
7. Plaintiff states that the defendants committed the acts described immediately above, willfully and maliciously, and that plaintiff is thereby entitled to exemplary damages in the amount of Five Hundred Thousand Dollars ($ 500,000.00) against the defendants, together with its attorney fees. *590 COUNT NO. 5
8. Plaintiff states that it is entitled to an accounting from the defendants for all profits, earnings, compensation and distributions which they received from their actions described above, both during and after the term of the employment of the individual defendants and to judgment against all the defendants in such amount as may be found to be due upon such accounting. COUNT NO. 6
9. Plaintiff states that the defendants have used, still use and will continue to use the confidential information described in COUNT NO. 1 unless restrained by this Court from continuing such activities. Plaintiff has no adequate remedy at law and states that upon hearing of the cause it is entitled to an Order for Permanent Injunction against the defendants enjoining them from such activities. The defendants filed counterclaims against Arnold, seeking damages in the amounts set forth in table 1. Table 1 Merriman
$ 319,264.00
Woodson
250,000.00
McClendon
521,019.42
Graphic
250,000.00
$ 1,340,283.42
All of the income from business activities referred to in Arnold's suit against Merriman, Woodson, McClendon, and Graphic was included *591 in Graphic's income. Merriman, Woodson, and McClendon were not acting in their individual capacities in engaging in the activities forming the basis of Arnold's suit against them and Graphic. In 1974, Graphic paid Arnold $ 5,000 in full settlement of the above-described lawsuit (including the counterclaims). This payment was made to avoid the expense of a jury trial and to prevent the substantial adverse impact on Graphic's business that would occur if Merriman and Woodson (who at that point were Graphic's only sales people) had to spend their time defending the lawsuit. Graphic also paid $ 650 in 1974 for legal fees in connection with Arnold's lawsuit. Graphic deducted the $ 5,000 settlement payment and the $ 650 in legal fees on its 1974 income tax return as ordinary and necessary business expenses. Respondent disallowed deductions of 75 percent of these amounts. After he was fired by Arnold, Merriman instituted a lawsuit against Arnold for vacation pay and severance pay in a Stark County, Ohio, court. Merriman's suit was settled for an undisclosed amount of vacation pay; the settlement was agreed to before the 1974 settlement of the Arnold suit and counterclaims, discussed *592 supra.
In a separate proceeding, Arnold sued McClendon on a covenant not to compete. When the Arnold suit and counterclaims discussed supra were settled, McClendon was under a temporary injunction restraining him from competing with Arnold. The 1974 settlement of the Arnold suit and counterclaims did not settle this separate suit against McClendon. During each of the years in issue, Graphic had issued and outstanding capital stock with stated value of $ 30,600, owned as follows: Percent of Graphic
Shareholder
Stock Owned
Merriman
32.6
Woodson
32.6
McClendon
32.6
Cepin
2.2
100.0
During each of the years in issue, VRE had issued and outstanding $ 33,500 of stock, owned as follows: Percent of VRE
Shareholder
Stock Owned
Graphic
70
Chauncey C. Raber
30
100
Chauncey C. Raber is not related to any of Graphic's shareholders in any manner. Respondent determined that Graphic and VRE were members of a controlled group of corporations for each year in issue and apportioned a single surtax exemption equally between them pursuant to section 1561. OPINION I. Legal Fee and Settlement Payments
*593 Petitioners maintain that Graphic is entitled to deduct the full amounts of the fee it paid to its lawyer ($ 650) and the settlement it paid to Arnold ($ 5,000) as ordinary and necessary business expenses under section 162(a). Petitioners assert that these expenses were incurred to defend against Arnold's efforts to block and impede Graphic as a competitor and Arnold's demand for an accounting. On the other hand, respondent views Arnold's lawsuit as being in essence against Graphic's three major shareholders for pirating Arnold's customers and using confidential information. Thus, respondent maintains that at least 75 percent of the legal fee and settlement payments was the expense of Graphic's shareholders and not deductible by Graphic. [2]
We agree with petitioners.
Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 1.162-1(a), Income Tax Regs., provides the general rule that *594 deductible business expenses "include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business * * *". Thus, to satisfy the requirements of section 162(a), an expense must be ordinary and necessary and have the requisite relationship to the taxpayer's business. We first address the business nature of the payments. The determination of whether a litigation expense is a business expense within the meaning of section 162(a) depends on "the origin and character of the claim" with respect to which the litigation expense was incurred, rather than the potential consequences to the taxpayer's fortunes. Commissioner v. Tellier,383 U.S. 687, 689 (1966); United States v. Gilmore,372 U.S. 39, 49 (1963); Ostrom v. Commissioner,77 T.C. 608, 613 (1981). The same criterion has been applied to determine whether a payment made in settlement of litigation constitutes such a business expense. Redwood Empire S & L Ass'n v. Commissioner,628 F.2d 516, 520 (CA9 1980), affg. *595 68 T.C. 960, 977 (1977); Anchor Coupling Company v. United States,427 F.2d 429 (CA7 1970); Entwicklungs & Finanzierungs A.G. v. Commissioner,68 T.C. 749, 759 (1977). Thus, the taxpayer's motive or purpose in making a settlement payment is irrelevant for this purpose. Anchor Coupling Company v. United States,427 F.2d at 433. In Boagni v. Commissioner,59 T.C. 708, 713 (1973), we described this rule as follows: [T]he "origin-of-the-claim" rule does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. * * * Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy. [Fn. ref. omitted.] Accord, *596 Brown v. United States,526 F.2d 135 (CA6 1975). Without regard to the particular legal theories advanced by Arnold ( Brown v. United States,526 F.2d at 139) or the merits of these theories ( Entwicklungs & Finanzierungs A.G. v. Commissioner,68 T.C. at 766), we believe that the origin of Arnold's claims against Graphic, as well as Arnold's claims against Merriman, Woodson, and McClendon, was the business activities of Graphic. Each of the claims made by Arnold in its complaint--operation of a business which competed with Arnold's business, recruitment of Arnold's former employees, use of Arnold's sales data and customer records, and solicitation of business from Arnold's customers--focussed on the business activities of Graphic. The assertedly wrongful acts forming the basis of Arnold's claims were committed in the conduct of Graphic's trade or business. It was Graphic's business that allegedly competed with Arnold's business. Any of Arnold's former employees that may have been solicited away from Arnold were recruited for employment with Graphic. Any of Arnold's sales data and customer records that may have been used were *597 used in Graphic's business. Any solicitation of business from Arnold's customers constituted sales by Graphic. On several occasions, this Court has sustained business expense deductions for litigation expenses and settlement payments with respect to litigation arising out of the competitive practices of a taxpayer. E.g., Entwicklungs & Finanzierungs A.G. v. Commissioner,supra;Bishop v. Commissioner,25 T.C. 969 (1956); International Shoe Co. v. Commissioner,38 B.T.A. 81, 95-97 (1938). The relief sought by Arnold--disgorgement of profits derived from Arnold's former customers, an accounting, and an injunction against further use of Arnold's sales data and customer records--also focussed on the business activities of Graphic. All of the income from business referred to in Arnold's lawsuit was included in Graphic's income. Any profits derived therefrom were Graphic's profits. Any accounting of such business income or profits necessarily would have to be obtained from Graphic. Under the circumstances recited in Arnold's complaint, any injunction against further use of Arnold's sales data or customer records would be a restraint *598 on the conduct of Graphic's business. Expenses paid in connection with litigation seeking an accounting of profits or a restraint against the conduct of profit-making activities have been held to be deductible business expenses. E.g., Kornhauser v. United States,276 U.S. 145 (1928); Dolese v. United States,605 F.2d 1146 (CA10 1979). We reject respondent's view that Arnold's lawsuit was basically against Graphic's three major shareholders. It may be true that some of the acts complained of by Arnold may have been accomplished by Merriman, Woodson, and McClendon (each of whom were named as individual defendants in Arnold's lawsuit), but such acts were performed in their capacities as employees of Graphic while conducting Graphic's business. Although employment relationships existed between Arnold, on the one hand, and Merriman, Woodson, and McClendon, on the other hand, before Graphic's business activities commenced, the record in these cases indicates that any claims involving such employment relationships were litigated in separate legal proceedings. Since the gravaman of Arnold's suit appears to be based on the operation of Graphic's business, *599 we conclude that the relationship of the legal fee and settlement to Graphic's business is not affected by whether Graphic's three major shareholders could have been held separately liable. [3] E.g., Kopp's Co., Inc. v. United States,636 F.2d 59 (CA4 1980); C. Ludwig Baumann & Co. v. Marcelle,203 F.2d 459, 461 (CA2 1953); Old Town Corp. v. Commissioner,37 T.C. 845 (1962). See Newark Morning Ledger Co. v. United States,539 F.2d 929 (CA3 1976). As such, the legal fee paid in defense of Arnold's claims and the settlement paid to liquidate these claims qualify under the origin-of-the-claim test as expenses paid or incurred in carrying on Graphic's trade or business. Respondent relies primarily on Ecco High Frequency Corp. v. Commisioner,167 F.2d 583 (CA2 1948), affg. a Memorandum Opinion of this Court dated August 7, 1946, to support the disallowance *600 of 75 percent of Graphic's payments. However, the decision in that case as to the deductibility of legal fees was grounded in Ecco's failure to prove error in respondent's determination that a portion of the legal fees was for services rendered to Ecco's organizer (Capita) personally. In finding that respondent's determination was not arbitrary, the Ecco court was influenced by evidence indicating that part of the legal fees was incurred to defend Capita individually against a lawsuit brought by his former employer to enjoin him from forever engaging in the business of his former employer either individually or through Ecco. The former employer's suit was originally against Capita alone; it was expanded to include Ecco after Capita began to operate Ecco. In view of our finding that Merriman, Woodson, and McClendon were not acting in their individual capacities in engaging in the assertedly wrongful activities, Ecco High Frequency Corp. v. Commissioner,supra, is not controlling. We again emphasize that claims involving Merriman, Woodson, and McClendon's employment relationships with Arnold were litigated in separate proceedings. Of significance, we think, *601 is Arnold's separate suit to enforce a covenant not to compete against McClendon; the expenses associated therewith seem analogous to those in Ecco, but are not at issue herein. We next address the "ordinary" and "necessary" requirements of section 162(a).
For an expense to be an ordinary one, the transaction which gives rise to it must be of common or frequent occurrence in the type of business conducted by the taxpayer. Welch v. Helvering,290 U.S. 111, 114 (1933); Deputy v. DuPont,308 U.S. 488, 495 (1940). Arnold's claims clearly relate to acts which were performed in the ordinary course of conducting Graphic's business. Certainly, the solicitation of sales from customers and the recruitment of employees are common or frequent transactions in the operation of a business forms strade or business. The requirement that an expense be ordinary, is also frequently equated with the distinction between expenses that are currently deductible and those that are capital in nature. Commissioner v. Tellier,383 U.S. at 689-690. However, respondent has not asserted that the payments in dispute were made to acquire a capital asset, *602 and the record does not support such an assertion in any event. Accordingly, we conclude that the legal fee and settlement payments were ordinary expenses of Graphic.
The requirement that an expense be necessary has been construed as imposing only the minimal requirement that the expense be appropriate and helpful for the development of the taxpayer's business. Commissioner v. Tellier,383 U.S. at 689; Welch v. Helvering,290 U.S. at 113. The assertedly wrongful acts forming the basis for Arnold's claims were income-producing activities conducted by Graphic; the legal fee and settlement payments were made to retain such income. Under these circumstances, the necessary requirement of section 162(a) is satisfied. We conclude that Graphic is entitled to deduct the full amount of the legal fees and settlement payment incurred with respect to Arnold's lawsuit. On this issue, we hold for petitioners. II. Brother-Sister Controlled Group
The parties agree that the 50-percent identical ownership requirement of section 1563(a)(2)(B) is satisfied herein. [4] Petitioners maintain that Graphic and VRE are nevertheless not members of a brother-sister *603 controlled group because the 80-percent requirement of section 1563(a)(2)(A) is not satisfied under the circumstances presented in this case. Respondent maintains that the 80-percent requirement is satisfied. We agree with petitioners. The parties' dispute as to the 80-percent test of section 1563(a)(5)[5] has been the subject of considerable litigation in this Court, the district courts, various courts of appeals, and the Court of Claims. In view of the diversity of views in the courts with respect to this issue, it appeared likely that the matter would ultimately be resolved by the Supreme Court. To relieve the parties of the burden of unnecessary further litigation in an appellate court, we refrained from deciding this case more promptly pending final *604 disposition by the Supreme Court. That Court recently resolved this issue by holding that the stock ownership of one who does not own stock in each of the members of a group of corporations is to be disregarded for purposes of the 80-percent test of section 1563(a)(2)(A). United States v. Vogel Fertilizer Co., 455 U.S.     (Jan. 13, 1982); B & M Investors Corp. v. Commissioner, 78 T.C.     (Jan. 29, 1982). *605 We conclude that the VRE stock owned by Chauncey C. Raber is not to be taken into account in applying the 80-percent test of section 1563(a)(2)(A). Accordingly, the 80-percent requirement is not satisfied; Graphic and VRE are not members of a brother-sister controlled group for the years in issue. On this issue, we hold for petitioners. Because of concessions by the parties, Decisions will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. Respondent does not dispute that Graphic is entitled to deduct 25 percent of the legal fee and settlement payments as ordinary and necessary expenses of its trade or business.↩
3. Indemnification by Graphic for such liability as well as litigation expenses and settlement payments may have been available to Merriman, Woodson, and McClendon. Ohio Rev. Code Ann. sec. 1701.13(E)↩ (Page 1978).
4. Under section 1563(e)(4), Merriman, Woodson, and McClendon are each treated as constructively owning 32.6 percent of the VRE stock owned by Graphic, or 22.8 percent of VRE. Since Merriman, Woodson, and McClendon each own, directly or indirectly, 22.8 percent of both Graphic and VRE, the 50-percent requirement is satisfied (i.e., 68.4 percent of Graphic and VRE are owned identically). Secs. 1563(a)(2)(B), 1563(d)(2)↩.
5. SEC. 1563. DEFINITIONS AND SPECIAL RULES. (a) Controlled Group of Corporations.--For purposes of this part, the term "controlled group of corporations" means any group of-- (2) Brother-sister controlled group.--Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing-- (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.↩