T.C. Memo. 2019-40

UNITED STATES TAX COURT

RICK B. FERGUSON AND DEANNA FERGUSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10733-16.

Filed April 23, 2019.

<u>Ashlea Brown</u>, <u>Walter M. Ebel III</u>, and <u>Joel F. Hoover</u>, for petitioners.

<u>Ann L. Darnold</u> and <u>H. Elizabeth H. Downs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>: Respondent determined deficiencies in petitioners'
Federal income tax of $571,003 and $72,586 for 2011 and 2012, respectively.

**[\*2]**    After concessions,[1] the issues for decision are (i) whether petitioners may deduct a settlement payment as a business expense on a Schedule C, Profit or Loss From Business; (ii) if not, whether petitioners may deduct the settlement as a passthrough loss on a Schedule E; and (iii) whether petitioners are entitled to deduct an ordinary loss from the deemed sale of real property that was transferred pursuant to the settlement.

All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate the stipulation of facts and the attached exhibits by this reference.  Petitioners are husband and wife.  When they timely filed their petition, they resided in Arkansas.

Background

Petitioner Rick Ferguson has been in the custom home building and construction business for over 30 years.  Mr. Ferguson's business is generally

---

[1]Respondent concedes that there was an error in his calculation of the adjustment from Schedule E, Supplemental Income and Loss, listed in the notice of deficiency for 2011, necessitating a Rule 155 computation.  As we explain infra note 6, petitioners abandoned their claim of a passthrough deduction for legal fees claimed by Mr. Ferguson's S corporation.

[*3] known in his community as "Rick Ferguson Custom Homes" and/or "Rick Ferguson Homes" (collectively, Rick Ferguson Homes). However, Mr. Ferguson operates his business through several different entities that engage in various stages of home design and construction. Mr. Ferguson serves as a partner, shareholder, and member in these entities that are organized as partnerships, limited liability companies, and corporations. He has developed approximately seven subdivisions and built between 150 and 200 homes in central Arkansas through these entities.

This case involves two of Mr. Ferguson's entities. Rick Ferguson, Inc. (RFI), is a C corporation of which Mr. Ferguson was the majority shareholder at all relevant times. RFI is the corporation through which Mr. Ferguson operates as a general contractor on custom home construction jobs. During the years in issue Mr. Ferguson received a salary of $44,400 from RFI.

The second entity, Pinnacle Precast Co. (Pinnacle), was an S corporation of which Mr. Ferguson was also the majority shareholder.[2] Pinnacle manufactured, supplied, and installed cast stone.

_____

[2]Mr. Ferguson held a 96.24658% ownership interest in Pinnacle during 2011 and a 100% ownership interest in 2012.

**[*4]** Lawsuit and Settlement

In 2005 RFI contracted with a third party (homeowners) for the sale of three lots in Little Rock, Arkansas, and the construction of a home on those lots. Mr. Ferguson signed the construction contract on behalf of RFI, which agreed to construct a large, single-family dwelling for the homeowners and to perform "all work necessary to complete the dwelling". RFI then subcontracted with 40 subcontractors to perform and supervise the work and to obtain appropriate building permits. One of these subcontractors was Pinnacle, which was hired to produce, supply, and install cast stone for use in the construction of the dwelling.

After construction was completed, relations between Mr. Ferguson and the homeowners became acrimonious. The construction of the dwelling involved the installation of cast stone panels, balustrades, and columns. According to the homeowners, the panels, balustrades, and columns threatened to fall or collapse because of defects in the manufacture and installation of the cast stone.

The homeowners filed a lawsuit against RFI, Pinnacle, Valley Falls Estates, Inc. (VFE),[3] and Mr. Ferguson seeking a multimillion-dollar judgment on various

---

[3]VFE was an S corporation owned by Mr. Ferguson that sold the homeowners the lots on which the dwelling was constructed. Accordingly, the homeowners named VFE as a defendant in their claims for restitution and rescission of the construction contract. The homeowners did not allege that VFE

(continued...)

**[*5]** legal grounds. Over the course of the litigation, the homeowners filed amended and second amended complaints. While the homeowners alleged various problems with the construction of the dwelling, petitioners and respondent agree that the primary grievance pertained to the cast stone.

The homeowners alleged in their original complaint that Pinnacle "improperly manufactured" the cast stone and, along with RFI, "improperly installed the defective cast stone." In their amended and second amended complaints the homeowners alleged that: (i) Pinnacle manufactured the cast stone "in such a manner as to render the product defective", (ii) the improper manufacturing of the cast stone, coupled with the improper installation, caused the balustrades and columns of the home's exterior to discolor and crack, and (iii) the defective installation of the cast stone included Pinnacle's failure to install "expansion joints" and "weep holes".

With respect to RFI the homeowners alleged in the complaint, amended complaint, and second amended complaint that: (i) RFI selected Pinnacle to supply the cast stone for the construction project, (ii) RFI improperly affixed the

---

[3](...continued)
played any other role in the construction of the dwelling. Neither party in this case contends that VFE was in any way responsible for the costs of the homeowners' lawsuit.

[*6] cast stone panels to the substrate walls, and (iii) RFI improperly installed the cast stone balustrades on the home's patio.

The homeowners identified Mr. Ferguson in their pleadings as the "majority stockholder and principal" of RFI and Pinnacle. The homeowners alleged that Mr. Ferguson had misrepresented RFI's and Pinnacle's expertise in manufacturing and installing cast stone. The homeowners also alleged that Mr. Ferguson, in concert with Pinnacle and RFI, elected to use construction methods and materials that reasonable persons would not have employed. On the basis of these allegations the homeowners sought to hold Mr. Ferguson jointly and severally liable with RFI and Pinnacle for counts of negligence, deceit, constructive fraud, and deceptive trade practices.[4]

In 2011 the lawsuit was settled. The homeowners, Mr. Ferguson, RFI, Pinnacle, and VFE were parties to the settlement agreement, which Mr. Ferguson signed in his individual capacity. As a part of the settlement, Mr. Ferguson

---

[4]Other than stating that Mr. Ferguson had a relationship of trust with the homeowners from prior business dealings, the homeowners' pleadings do not allege that Mr. Ferguson acted in any capacity other than as the principal and majority shareholder of RFI and Pinnacle. On the basis of this and other evidence in the record, we specifically find that all of Mr. Ferguson's actions with respect to the construction project at issue were on behalf of RFI and Pinnacle.

[*7] transferred nine parcels of real estate to the homeowners.[5]  Mr. Ferguson also gave the homeowners a check, which was drawn on his personal bank account.  In turn the homeowners agreed to release Mr. Ferguson, RFI, Pinnacle, and VFE from their claims.

Pinnacle recorded the aggregate value of the check payment and the fair market value of the real estate transfer (collectively, settlement payment) on its books for 2011 as a loan from Mr. Ferguson.  No written loan documents were prepared, and no interest was accrued on the loan.  Mr. Ferguson believed he could treat these amounts as a loan to Pinnacle because he believed that the settlement was attributable to the defective cast stone.  Pinnacle had no sales or gross receipts in 2012, and Mr. Ferguson shut it down later that year; he assumed Pinnacle's liabilities regarding the recorded loan, essentially relieving Pinnacle of the obligation to repay him.

Tax Returns

On its 2011 tax return Pinnacle reported gross receipts of $94,987 and claimed deductions for ordinary business expenses, which included:  (i) $101,393

---

[5]These properties were actually transferred to the homeowners by three passthrough entities owned by Mr. Ferguson that were not parties to the lawsuit or the settlement agreement.  The notice of deficiency treated Mr. Ferguson as the owner and transferor of the properties rather than the passthrough entities.  We will deem this a concession by respondent and do the same.

[*8] in legal fees, (ii) the settlement payment, and (iii) an ordinary loss from the deemed sales of three (of nine) parcels that were transferred to the homeowners. Pinnacle reported long-term capital gains from the deemed sales of the other six parcels.

On their 2011 income tax return petitioners reported a passthrough loss from Pinnacle and carried it forward to their 2012 return. Petitioners' 2011 income tax return includes two Schedules C for a commercial construction business and a home remodeling business; the latter reported net profit of $846,119. Mr. Ferguson also reported wage income from RFI on petitioners' 2011 and 2012 returns.

Notice of Deficiency

Respondent timely issued a notice of deficiency to petitioners for tax years 2011 and 2012 reporting deficiencies of $571,003 and $72,586, respectively. In the notice respondent disallowed petitioners' passthrough loss deduction from Pinnacle in its entirety. Instead, respondent treated the settlement payment as an unreimbursed employee business expense pertaining to Mr. Ferguson's employment with RFI and disallowed in full Pinnacle's deduction of the legal fees and ordinary loss. Respondent allowed petitioners to claim an itemized deduction

**[\*9]** for the settlement payment but did not make similar allowances for the legal fees[6] or the ordinary loss from the deemed sales of the parcels. Respondent's adjustments resulted in the disallowance of petitioners' carryforward net operating loss for 2012.[7] Substantial portions of the deficiencies are attributable to the application of the alternative minimum tax (AMT).[8] Petitioners timely petitioned this Court, and a trial was held in Little Rock, Arkansas.

---

[6]Petitioners assigned error in their petition to respondent's disallowance of Pinnacle's deduction for legal fees. However, they did not address the disallowed legal fees at trial or on brief. Accordingly, we deem the issue abandoned. See Thiessen v. Commissioner, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned.").

[7]Petitioners reported certain items on their 2012 return pertaining to their interest in Generic Holdings, LLC (Generic), which is a partnership subject to the unified audit and litigation procedures set forth in secs. 6221 through 6234 (TEFRA partnership procedures). For purposes of preparing the notice of deficiency on which this case is based, respondent treated petitioners' Generic-related partnership items as if they were correctly reported on petitioners' 2012 tax return. However, the tax treatment of petitioners' Generic-related partnership items is the subject of an ongoing TEFRA examination by the Commissioner. The parties have stipulated that the adjustments necessary to apply the results of the TEFRA partnership proceeding to petitioners will be treated as computational adjustments under sec. 6231(a)(6). The parties have also stipulated that, to the extent any partnership adjustments result in a change to petitioners' tax liability attributable to nonpartnership items (which are at issue in this case), such change may be treated as a computational adjustment under sec. 6231(a)(6) and assessed, credited, or refunded accordingly.

[8]This and other numerical adjustments will be addressed by the parties in their Rule 155 computation.

[*10]                              OPINION

I.      Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof shifts to the Commissioner, however, to the extent the taxpayer produces credible evidence with respect to a factual issue relevant to the deficiency, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Commissioner with regard to all reasonable requests for information. Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

The parties stipulated that petitioners have maintained all records required under the Code and have cooperated with respondent's reasonable requests for information. However, the parties disagree about whether petitioners have produced the requisite credible evidence so that the burden of proof should be shifted to respondent under section 7491(a).

With respect to the deductibility of the settlement payment, we need not resolve this dispute because our conclusions are based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. See Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo.

[*11] 2003-212; Knudsen v. Commissioner, 131 T.C. 185, 189 (2008),

supplementing T.C. Memo. 2007-340; Martin Ice Cream Co. v. Commissioner,

110 T.C. 189, 210 n.16 (1998).

As for the ordinary loss claimed by Pinnacle for the deemed sales of three

transferred parcels, we find that petitioners failed to produce credible evidence to

support their return position that Pinnacle is entitled to an ordinary loss deduction.

See infra part III.  Accordingly, section 7491(a) does not apply, and the burden of

proof on this issue remains with petitioners.

II.     The Settlement Payment

A.     Contentions of the Parties

Petitioners argue that Pinnacle properly deducted the settlement payment

and that they are entitled to their pro rata share of the deduction.  According to

petitioners, the homeowners' lawsuit is attributable to Pinnacle, and the payment

of the settlement by Mr. Ferguson should be treated as a loan or capital

contribution to the S corporation.[9]  In the alternative petitioners contend that the

---

[9]If a business meets the requirements of sec. 1361, it may elect to be treated as an S corporation and generally avoid corporate tax.  Secs. 1362(a), 1363(a).  An S corporation, like a partnership, is a flowthrough entity; its income and losses flowthrough to its shareholders, who then pay income tax.  See sec. 1363(b).  Sec. 1366(a)(1) provides that an S corporation shareholder determines his or her tax liability by taking into account his or her pro rata share of the S corporation's

(continued...)

[*12] settlement payment should be deducted on a Schedule C[10] as an ordinary and necessary expense of a business activity other than employment.

Respondent counters that Pinnacle cannot deduct any of the costs pertaining to the lawsuit because it did not pay or incur them. Respondent further contends that the costs of the lawsuit were the responsibility of RFI. Accordingly, petitioners may deduct the settlement payment only as an unreimbursed employee business expense.

B.     Schedule C Deduction

We first address petitioners' argument that they are entitled to deduct the settlement payment as an ordinary and necessary business expense on a Schedule C.

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

_____

[9](...continued)
income, losses, deductions, and credits for the S corporation's taxable year ending with or in the shareholder's taxable year. We have jurisdiction in this deficiency case to redetermine the income and expense items of Pinnacle. See Winter v. Commissioner, 135 T.C. 238 (2010); Berry v. Commissioner, T.C. Memo. 2018-143, at *6; Alli v. Commissioner, T.C. Memo. 2014-15, at *17 n.11.

[10]It is commonly known that a Schedule C is the form a sole proprietor uses to report income and deductions attributable to the sole proprietorship.

**[\*13]** <u>v. Helvering</u>, 292 U.S. 435, 440 (1934). Section 162(a) permits a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. See <u>Commissioner v. Lincoln Sav. & Loan Ass'n</u>, 403 U.S. 345, 352 (1971). Section 62(a)(1) allows deductions for those expenses to be made from gross income in computing adjusted gross income (AGI) except for those expenses incurred by a taxpayer as an employee.

The parties agree that petitioners are entitled to deduct the settlement payment as a trade or business expense under section 162. However, they disagree as to whether the settlement payment should be deducted from gross income in computing petitioners' AGI.[11]

Respondent asserts that the settlement payment was RFI's expense because RFI was responsible for the work that gave rise to the homeowners' lawsuit. Respondent argues that as a statutory employee of RFI under section 3121(d)(1),[12]

---

[11]If the settlement payment is treated as an unreimbursed employee business expense as respondent determined, certain consequences follow: (1) the deduction would be limited by sec. 67(a) and (2) petitioners might be subject to AMT liability because miscellaneous itemized deductions are not taken into account in the determination of taxpayers' AMT income. See sec. 56(b)(1)(A); <u>Johnson v. Commissioner</u>, T.C. Memo. 1993-530.

[12]Sec. 3121(d)(1), (3), and (4) describes individuals who are considered employees regardless of their status under the common law. Individuals described in those paragraphs are commonly referred to as "statutory" employees. <u>Joseph</u>

(continued...)

[*14] Mr. Ferguson may deduct the settlement payment only as an unreimbursed employee business expense.  Petitioners counter that RFI was not Mr. Ferguson's only trade or business.  According to petitioners, they may deduct the settlement payment on a Schedule C because Mr. Ferguson paid it to protect his business reputation and, by extension, his other businesses.

The deductibility of legal fees depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities.  See United States v. Gilmore, 372 U.S. 39 (1963); Helgerson v. United States, 426 F.2d 1293, 1297 (8th Cir. 1970).[13]  Legal expenses paid as ordinary and necessary

---

[12](...continued)
M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), aff'd, 93 F. App'x 473 (3d Cir. 2004).  Sec. 3121(d)(1) defines a statutory employee as "any officer of a corporation".  Petitioners do not contend that statutory employees under sec. 3121(d)(1) may deduct business expenses on Schedules C.  See Cole v. Commissioner, T.C. Memo. 2006-44; Rev. Rul. 90-93, 1990-2 C.B. 33; cf. Rosato v. Commissioner, T.C. Memo. 2010-39 (holding that a statutory employee under sec. 3121(d)(3) is not an employee for purposes of sec. 62 and may deduct business expenses on Schedule C).

[13]The same criterion has been applied to determine whether a payment made in settlement of litigation constitutes such a business expense.  Redwood Empire Sav. & Loan Ass'n v. Commissioner, 628 F.2d 516, 520 (9th Cir. 1980), aff'g 68 T.C. 960, 977 (1977); Anchor Coupling Co. v. United States, 427 F.2d 429 (7th Cir. 1970); Entwicklungs & Finanzierungs A.G. v. Commissioner, 68 T.C. 749, 759 (1977).

**[\*15]** expenses may be deductible on Schedule C when the matter generating the expense arises from, or is proximately related to, a business activity other than employment. Colvin v. Commissioner, T.C. Memo. 2007-157, slip op. at 36-37, aff'd, 285 F. App'x 157 (5th Cir. 2008); Test v. Commissioner, T.C. Memo. 2000-362, slip op. at 12-13, aff'd, 49 F. App'x 96 (9th Cir. 2002); see Bagley v. Commissioner, 8 T.C. 130, 134 (1947). A taxpayer generally must report on Schedule A, Itemized Deductions, legal expenses attributable to the taxpayer's service as an employee. See sec. 62(a)(1); McKay v. Commissioner, 102 T.C. 465, 493 (1994), vacated on other grounds 84 F.3d 433 (5th Cir. 1996); O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Test v. Commissioner, T.C. Memo. 2000-362.

Petitioners do not dispute that Mr. Ferguson was a shareholder and employee of RFI. The question therefore becomes whether and to what extent the homeowners' lawsuit arose from, or is proximately related to, a business activity of Mr. Ferguson other than his employment with RFI.

The record establishes that the origin of the homeowners' lawsuit stems from work performed by RFI and Pinnacle rather than a separate trade or business of Mr. Ferguson. While the homeowners' complaint, amended complaint, and second amended complaint alleged various problems with the construction of the

[*16] dwelling, the parties agree that the claims regarding the cast stone were the homeowners' primary grievance. The cast stone work was performed and/or supervised by RFI and Pinnacle. RFI was the general contractor for the construction project and agreed to perform "all work necessary to complete the dwelling". Pinnacle was subcontracted to produce, supply, and install cast stone for use in the construction.

While the homeowners also sued Mr. Ferguson in his individual capacity, he was not a party to the construction contract with the homeowners. Furthermore, the homeowners did not allege that Mr. Ferguson took any action in the construction of the dwelling other than as the face and controlling shareholder of RFI and Pinnacle.[14]

We recognize that Mr. Ferguson had a separate home remodeling business that generated substantial Schedule C income for 2011, and we do not doubt that he was indeed concerned about the consequences of an unfavorable judgment on this and other business ventures. However, we are bound by the rule established

---

[14]Petitioners suggest that Mr. Ferguson was operating Rick Ferguson Homes as a sole proprietorship and that this entity was separate from RFI. However, petitioners' returns for the years in issue do not include Schedules C for Rick Ferguson Homes. Moreover, Mr. Ferguson testified that RFI has done business as Rick Ferguson Homes. Given these facts, we decline to find that Rick Ferguson Homes and RFI were separate entities during the construction of the homeowners' dwelling.

**[*17]** by <u>Gilmore</u>, 372 U.S. at 48, to look at the origin of the underlying claim and not the consequences. In this case the origin of the claims is the work performed by RFI and Pinnacle, both of which filed corporate returns for 2011. Accordingly, petitioners cannot deduct the settlement payment on a Schedule C.

C.     <u>Loan to Pinnacle</u>

We next address petitioners' primary argument that Pinnacle should be treated as having paid the settlement. They contend that Mr. Ferguson intended the settlement payment to be a loan to Pinnacle because it was responsible for the work that gave rise to the homeowners' claims.

Whether a particular transaction constitutes a loan is a question of fact to be determined by considering all of the pertinent facts in the case, <u>Fisher v. Commissioner</u>, 54 T.C. 905, 909 (1970), and we look for both objective and subjective evidence of the parties' intent, <u>see</u> <u>United States v. Uneco, Inc. (In re Uneco, Inc.)</u>, 532 F.2d 1204, 1209 (8th Cir. 1976). The Court of Appeals for the Eighth Circuit, to which an appeal would lie absent a stipulation to the contrary, lists a number of factors to determine whether a bona fide loan exists, such as whether: (1) the corporation was so grossly undercapitalized that the loans were in fact needed for capital purposes and were actually intended to be risked capital rather than a loan, (2) the purported loans were made in proportion to equity

[*18] holdings, (3) the repayment of the loan was predicated on the success of the venture, (4) there was a fixed date for payment of the note and a reasonable expectation of payment by that date, (5) the note was subordinated to other corporate debts, (6) third parties would have made the loan under the same conditions, (7) the claimed loan was secured by a mortgage or otherwise, (8) a provision was made for a sinking fund to retire the loan, (9) the person making the purported loan participated in the management of the corporation, and (10) the corporation had a large proportion of debt to equity.  J.S. Biritz Constr. Co. v. Commissioner, 387 F.2d 451, 457 (8th Cir. 1967), rev'g T.C. Memo. 1966-227; see also Uneco, Inc., 532 F.2d at 1208.  The factors are not equally significant, and no one factor is determinative.  Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980).  Nor are all the factors relevant to every case.  J.S. Biritz Constr. Co. v. Commissioner, 387 F.2d at 456-457.

Petitioners' argument that Mr. Ferguson's payment of the settlement was actually a loan to Pinnacle is not supported by the record.  Petitioners cite Pinnacle's treating the settlement payment as a loan on its books as evidence of a bona fide loan.  However, no loan documents were prepared, and the record is devoid of any evidence of a fixed repayment date or repayment schedule.  No interest or principal was paid or accrued on the purported loan, which Mr.

[*19] Ferguson effectively canceled when he ended Pinnacle's operations in 2012. Furthermore, Mr. Ferguson testified that Pinnacle had little chance of obtaining third-party financing on its own when he paid the settlement. This view was shared by Mr. Ferguson's accountant, who acknowledged at trial that Pinnacle's poor cash position made repayment unlikely.

On the basis of these facts, we find that Mr. Ferguson knew that Pinnacle would be unable to repay him when he funded the settlement. Accordingly, Mr. Ferguson did not intend to establish a creditor-debtor relationship with Pinnacle, and his payment of the settlement was not a loan to the S corporation.

D.      Deemed Capital Contribution to Pinnacle

Petitioners argue that, even if Mr. Ferguson's payment of the settlement was not a loan, the payment was nevertheless attributable to Pinnacle's trade or business and deductible by Pinnacle as an ordinary and necessary business expense. According to petitioners, Mr. Ferguson's payment of the settlement is a contribution to the capital of Pinnacle if it is not a loan. See Rink v. Commissioner, 51 T.C. 746, 751 (1969) (stating that payment of corporate expenses by shareholder generally constitutes "either a loan or a contribution to the capital of the corporation and * * * [is] deductible, if at all, by the corporation"); Koree v. Commissioner, 40 T.C. 961, 966 (1963) (holding that

**[\*20]** payments in furtherance of a venture calculated to enrich corporation are capital in nature); see also Gantner v. Commissioner, 905 F.2d 241 (8th Cir. 1990), aff'g 91 T.C. 713 (1988) and 92 T.C. 192 (1988).

Respondent acknowledges that a shareholder's payment of corporate expenses may be deemed a capital contribution in appropriate circumstances.[15] However, respondent asserts that "[a]ny conclusion that a capital contribution [to Pinnacle] was deemed to have been made prior to the payment of the settlement costs would still require a finding that the settlement costs were, in fact, the expenses of Pinnacle * * * despite their payment by Rick Ferguson." According to respondent, the Court can make no such finding because the settlement costs were solely attributable to RFI.

In support of his argument respondent contends that (i) RFI was the general contractor on and bore the ultimate responsibility for the construction project that gave rise to the homeowners' lawsuit, (ii) Pinnacle was not a party to RFI and the homeowners' contract, and (iii) the allegations in the homeowners' lawsuit address RFI's decisions to use defective materials and RFI's inadequate installation of the materials. Citing these factors, respondent argues that the costs

---

[15]Respondent does not contend that this principle is inapplicable to S corporations.

**[*21]** and obligations arising from the ill-fated construction project were the responsibility of RFI.

We believe respondent ignores the realities of Pinnacle's role in the construction project. As mentioned previously, the homeowners' primary grievance pertained to the cast stone. In the complaint the homeowners alleged that Pinnacle "improperly manufactured" the cast stone. In the amended and second amended complaints the homeowners alleged that Pinnacle manufactured the cast stone "in such a manner as to render the product defective." The amended and second amended complaints further alleged that the improper manufacturing of the cast stone, coupled with the improper installation, caused the balustrades and columns of the dwelling's exterior to discolor and crack.

While respondent avers that Pinnacle played no role in the installation of the cast stone, the record indicates otherwise. The parties stipulated that Pinnacle subcontracted with RFI to "produce, supply, and install cast stone" for use in the construction of the homeowners' home. The homeowners' original complaint alleges that Pinnacle, along with RFI, "improperly installed the defective cast stone." In the amended and second amended complaints the homeowners allege that the defective installation of the cast stone included Pinnacle's failure to install "expansion joints" and "weep holes".

[*22] Furthermore, Pinnacle's interests were accounted for in the settlement agreement. Pinnacle was a party thereto and was therefore released by the homeowners from all claims pertaining to the construction project at issue. In the light of these facts, we disagree with respondent that the homeowners' lawsuit was solely attributable to RFI.

That is not to say, however, that we agree with petitioners' contention that the lawsuit was solely attributable to Pinnacle. RFI was also a party to the settlement agreement. As respondent notes, the complaint, amended complaint, and second amended complaint allege that RFI selected Pinnacle to supply the cast stone for the construction project. All three pleadings also contain allegations that RFI improperly installed the cast stone. Furthermore, pursuant to its contract with the homeowners, RFI was responsible for "performing all work necessary to complete the dwelling for the Contract price". At trial Mr. Ferguson confirmed that the general contractor--RFI, in this case--was "ultimately responsible" for the construction of the dwelling.

This Court has examined lawsuit allegations to determine who, among associated businesses and individuals, may deduct legal fees incurred as joint defendants in a lawsuit. See Hauge v. Commissioner, T.C. Memo. 2005-276, slip op. at 13, 16-18; Graphic Bus. Sys., Inc. v. Commissioner, T.C. Memo. 1982-167,

**[\*23]** 1982 Tax Ct. Memo LEXIS 583, at \*14-\*17. We have also allocated deductible and nondeductible litigation expenses where appropriate. See, e.g., Bledsoe v. Commissioner, T.C. Memo. 1995-521, slip op. at 12 (allocating business and personal expenses).

We believe an allocation of the deduction for the settlement payment is appropriate in this case. It is clear from the record that the lawsuit that gave rise to the settlement was partially attributable to RFI and partially attributable to Pinnacle. Furthermore, the settlement was paid by Mr. Ferguson, the controlling shareholder of both corporations. Accordingly, after a thorough review of the record, including the lawsuit pleadings and the settlement agreement, we allocate 50% of the settlement payment to RFI and 50% to Pinnacle.[16]

Because Mr. Ferguson personally funded the settlement payment, 50% of which was an expense of Pinnacle, we will deem 50% of the payment a capital contribution to Pinnacle. See Rink v. Commissioner, 51 T.C. at 751-752; Koree v. Commissioner, 40 T.C. at 966. Accordingly, Pinnacle may deduct 50% of the

---

[16]Because all of Mr. Ferguson's actions with respect to the construction project at issue were on behalf of RFI and Pinnacle, see supra note 4, we allocate 0% of the settlement payment to Mr. Ferguson individually. We also allocate 0% to VFE because neither party has argued that VFE bore any responsibility for the costs of the lawsuit.

**[*24]** settlement payment for 2011, and petitioners are entitled to their pro rata share of any loss this deduction produces.

Because the remaining 50% was an expense of RFI, we would normally hold that this portion of the payment is not a deductible expense to petitioners but rather a capital contribution to the C corporation. See Rink v. Commissioner, 51 T.C. at 751-752; Koree v. Commissioner, 40 T.C. at 966. However, respondent has conceded that petitioners can deduct amounts paid on behalf of RFI as unreimbursed employee business expenses. On the basis of this concession, petitioners may deduct the remaining 50% of the settlement payment as an unreimbursed employee business expense.

III. Loss From Deemed Sale of Real Property

Respondent disallowed an ordinary loss deduction claimed by Pinnacle on its 2011 return for the deemed sale of three parcels that were transferred to the homeowners as part of the settlement. Petitioners argue that either Mr. Ferguson or Pinnacle is entitled to deduct the loss. In his answering brief respondent concedes that petitioners should be allowed a capital loss deduction to reflect that in the deemed sales, the parcels were relinquished for less than their bases. It is unclear from petitioners' briefs whether they still maintain that the deemed sales should produce an ordinary loss rather than a capital one.

[*25] Section 1221(a) provides that a capital asset is "property held by the taxpayer (whether or not connected with his trade or business)". Congress has provided in section 1221 eight specific types of property excepted from the definition of a capital asset. See sec. 1221(a).

Petitioners have not directed the Court to any of the exceptions listed in section 1221. There is scant evidence in the record pertaining to the three parcels at issue, and it is unclear why these properties differed from the other six parcels, for which capital gains were reported on their deemed sales. Accordingly, petitioners have not met their burden to prove that they are entitled to an ordinary loss deduction for the deemed sales of the three parcels. We therefore accept respondent's concession and hold that petitioners are entitled to a capital loss deduction with respect to these properties.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.